UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

NANCY JACKSON,

                                        Plaintiff,

                -against-

THE CITY OF NEW YORK, P.O. SHAWN JOHNSTON,
P.O. DANIELLE CAMPO, P.O. JOHN DAMMACCO,                    No. 10 CV  02530 (ERK)(SMG)
SGT. ALEX MONTESQUIEU, POLICE OFFICERS
JOHN DOE and RICHARD ROE (names and number of
whom are unknown at present) and other unidentified
members of the New York City Police Department,

                                        Defendants.

----------------------------------------------------------------------- x

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITON TO DEFENDANTS' SUMMARY JUDGMENT MOTION

Robert M. Rambadadt
The Rambadadt Law Office
20 W. 20th Street—2nd Floor
New York, New York 10011
(646) 450-8049

Served on January 11, 2013

Jackson v. City of New York, et al. 10-CV-02530

TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................- 2 -

TABLE OF AUTHORITIES .........................................................................- 4 -

**STATEMENT OF FACTS**........................................................................- 6 -

**STANDARD OF REVIEW** .......................................................................- 9 -

POINT I ....................................................................................................- 10 -

PLAINTIFF'S UNLAWFUL SEIZURE AND FALSE ARREST CLAIMS ARE _VALID  AND
SUMMARY JUDGMENT SHOULD BE DENIED _____
___.............................................................................................................- 10 -

1.    P.O. DAMMACCO HAD NO REASONABLE SUSPICION OF
CRIMINAL ACTIVITY ...........................................................- 14 -

**2.        THERE WAS NO CRIMINAL ACTIVITY AND NO PROBABLE CAUSE
TO ARREST** - 15 -

POINT II .................................................................................................- 16 -

PLAINTIFF HAS A VALID MALICIOUS PROSECUTION CLAIM
_____.............................................................- 16 -

POINT III.................................................................................................- 19 -

PLAINTIFF HAS A VALID CLAIM FOR EXCESSIVE FORCE AND UNREASONABLE
HANDCUFFING _____..................................- 19 -

POINT IV.................................................................................................- 23 -

DISPUTED ISSUES OF FACT AND LACK OF PROBABLE CAUSE TO ARREST
PRECLUDE SUMMARY JUDGMENT ON THE ISSUE OF QUALIFIED IMMUNITY
_____.................................................................................- 23 -

POINT V..................................................................................................- 25 -

PLAINTIFF HAS A VALID STATE LAW CLAIMS AS ASSERTED AGAINST
DEFEDANTS_____ -
25 -

POINT VI.................................................................................................- 29 -

PLAINTIFF HAS A VALID CLAIM FOR NEGLIGENT HIRING, RETENTION, TRAINING
AND SUPERVISION
_____.............................................- 29 -

Jackson v. City of New York, et al. 10-CV-02530

**CONCLUSION** ..................................................................................................- 30 -

TABLE OF AUTHORITIES

**Cases**

." *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 671 (2d Cir. 1996) ......................................- 18 -

., *Oliveira v. Mayer,* 23 F.3d 642, 647-48 (2d Cir. 1994).......................................................- 18 -

*Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) ....- 25 -

*Brown v. City of New York*, 718 NYS 2d. 4 (2000). ............................................................- 26 -

*Brown v. Texas*, 443 U.S. 47, 50 (1979)...............................................................................- 12 -

*Cerrone,* 246 F.3d at 202-03..................................................................................................- 25 -

citing *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004).............................................- 17 -

*Coleman v. City of Niagara Falls*, 09-CV-157, 2010 U.S. Dist. LEXIS 73089 *20................- 26 -

*Coleman,* 2010 U.S. Dist. LEXIS 73089 *20 ................................................................- 26 -, - 27 -

*Conway v. Village of Mount Kisco*, 750 F.2d 205, 215 (2d Cir.1984)) ..................................- 19 -

*Coto v. Pabon, et al,*, 2008 U.S. Dist. LEXIS 94564, *46 ............................................- 16 -, - 17 -

*Dunaway* v. *New York,* 442 U. S. 200 (1979)........................................................................- 13 -

*Dunaway v. New York,* 442 U.S. 200, 212-16, 99 S.Ct. 2248, 2256-59, 60 L.Ed.2d 824 (1979) ...- 11 -

*Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (EDNY 2005) ....................................- 22 -

*Fincher v. County of Westchester*, 979 F. Supp 989, 1002 (SDNY 1997) ...............................- 26 -

*Fincher v. County of Westchester*, 979 F. Supp 989, 1002 (SDNY 1997). ..............................- 26 -

*Florida v. Royer*, 460 U.S. 491, 497 (1983) ........................................................................- 16 -

*Florida v. Royer,* 460 U.S. 491, 497-98, 103 S.Ct. 1319, 1323-24, 75 L.Ed.2d 229 (1983) - 12 -, - 14 -

*Florida v. Royer*, 460 U.S. 491, 498 (1983) ................................................................- 13 -, - 20 -

*Frigerio v. United States of America*, 10-civ-9086, 2011 U.S. Dist LEXIS 80708 *34 ..........- 28 -

*Funnye v. Paragon Sporting Goods Co.*, No. 98 Civ. 7731, 2001 U.S. Dist. LEXIS 3337, at *3 (S.D.N.Y. Mar. 27, 2001) ................................................................................................- 10 -

*Goodwin v. New York City Housing Athority,* 42 A.D. 3d 63 (1st Dept. 2007) ......................- 27 -

*Goodwin v. New York City Housing Athority*, 42 A.D. 3d 63 (1st Dept. 2007). ......................- 26 -

*Hayes v. Florida,* 470 U.S. 811, 815-16, 105 S.Ct. 1643, 1646-47, 84 L.Ed.2d 705 (1985) ...- 11 -

*Heck v. Humphrey*, 512 US 477, 486-487 (1994)..................................................................- 17 -

*Henry v. United States*, 361 U.S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed. 2d 134 (1959)..............- 25 -

*Howard v. Schoberle,* 907 F. Supp. 671, 676 (S.D.N.Y. 1995)..................................................- 9 -

*Howard*, 907 F.Supp. at 677 (citing *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994))......................................................................................................................- 10 -

*Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993) ......................................................- 28 -

*INS v. Delgado,* 466 U.S. 210, 218-21, 104 S.Ct. 1758, 1763-65, 80 L.Ed.2d 247 (1984)......- 11 -

*Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir. 2007) .................................................- 24 -

*Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) ..........................................................- 17 -

*Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir. 2003) ...........................................................- 16 -

*Kirk v. Metropoliltan Transp. Auth.*, No. 99 Civ. 2787, 2001 WL 258605, at *7 (S.D.N.Y. March 14, 2001)......................................................................................................................- 24 -

*Lambert,* 46 F.3d at 1069 .....................................................................................................- 12 -

*Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir.1997)..................................................................- 24 -

*Lennon v. Miller*, 66 F.3d 415, 420 (2d Cir. 1995).................................................................- 24 -

*Lowth v. Town of Cheektowaga*, 83 F.3d 563, 573 (2d Cir. 1996) ...............................- 18 -, - 19 -

*Lynch ex rel. v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (SDNY 2008) ....................- 22 -

*Martin v. City of Albany,* 42 N.Y.2d 13, 17, 364 N.E.2d 1304, 396 N.Y.S.2d 612 (N.Y. 1977)- 18 -

*McClellan v. Smith*, 439 F.2d 137 (2d. Cir. 2006) ................................................................- 24 -

*Mesiti v.Wegman*, 307 A.D.2d 339, 341, 763 N.Y.S.2d 67 (2d Dep't 2003) ...........................- 18 -

*Michigan v. Chesternut,* 486 U.S. 567, 574-76, 108 S.Ct. 1975, 1979-81, 100 L.Ed.2d 565 (1988) .....................................................................................................................................- 11 -

*Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) .................................- 28 -

*Oliveria v. Mayer*, 23 F.2d 642, 649 (2d Cir.1994) .............................................................- 24 -

*Reid v. Georgia,* 448 U.S. 438, 440; 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 ........................- 11 -

*Ricuitti v. NYC Transit Authority*, 124 F.3d 123, 131 (2d Cir. 1997) ..................................- 19 -

*Romero v. City of New York*, 839 F. Supp. 2d 588, 628-29 (EDNY 2012). ...........................- 28 -

*Romero v. City of New York*, 839 F. Supp. 2d 588, 629 (EDNY 2012) ..................................- 28 -

*Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004)......................................................- 17 -

*Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir.1994) ............................................................- 19 -

*Royer v. State of Florida*, 389 So. 2d 1007, 1020 (1979) .....................................................- 16 -

*Terry v. Ohio*, 392 U.S. 1, 20-22 (1968) ..............................................................................- 20 -

*Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) ........................- 12 -

*Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968) ........................- 11 -

*Terry,* 392 U.S. at 32-33, 88 S.Ct. at 1885-86 ........................................................- 12 -, - 14 -

*United States v. Bloom,* 975 F.2d 1447, 1450-51 (10th Cir.1992) .........................................- 11 -

*United States v. Davis*, 94 F.3d 1465, 1469 (1996) ................................- 12 -, - 13 -, - 14 -, - 15 -

*United States v. Fisher,* 702 F.2d 372, 375 (2d Cir. 1983) ....................................................- 25 -

*United States v. Melendez-Garcia,* 28 F.3d 1046, 1051 (10th Cir.1994 .................................- 12 -

*United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) ...........- 11 -

*United States v. Ward,* 961 F.2d 1526, 1529 ( (1980 ............................................................- 12 -

*United States v. Ward,* 961 F.2d 1526, 1529 (10th Cir.1992) ................................................- 11 -

*Unites States v. Davis*, 94 F.3d 1465, 1468 (1996) ...............................................................- 11 -

*Village of Goshen Police Dept.*, 256 F. Supp 171, 175 (SDNY 2003)....................................- 26 -

*Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996) ...............................................................- 10 -

*Winn v. McQuillan*, 390 F. Supp 2d 385, 389-390 (S.D.N.Y. 2005)......................................- 16 -

*Zellner v. Summerlin*, 494 F. 3d 344, 2007 U.S. App LEXIS 17272, 57. ...............................- 24 -

**Statutes**

42 U.S.C. §§1983 ..........................................................................................................- 6 -

Gen. Mun. Law §50-e ...................................................................................................- 26 -

GML §50-e(6) ...............................................................................................................- 27 -

**Other Authorities**

. *Coto v. Pabon, et al.*, 2008 U.S. Dist. LEXIS 94564, *47 .....................................................- 18 -

*Colon v. City of New York*, 60 N.Y.2d at 82, 455 N.E.2d 1248, 468 N.Y.S.2d 453................- 18 -

*Graham v. Connor*, 490 U.S. 386, 396 (1989) ....................................................................- 20 -

Handler, J.G., *Ballentine's Law Dictionary: Legal Assistant Edition* (1994, Albany: Delmar Publishers), at p. 431...................................................................... - 15 -, - 17 -, - 19 -

*Lowth v. Town of Cheektowaga,* 82 F.3d 563, 671 (2d Cir. 1996) ........................................- 18 -

*Oliveira v. Mayer,* 23 F.3d 642, 647-48 (2d Cir. 1994).........................................................- 18 -

*Ostroski v. Town of Southland*, 443 F.Supp 2d 325, *340............................................................- 18 -

*Ramashwar v. Espinoza*, 2006 U.S. Dist. LEXIS130, 2006 WL 23481 at *7..........................- 18 -

*Williams v. City of New York*, 02 Civ. 3693, 2003 U.S. Dist. LEXIS 19078, 2003 WL 22434151 at *6 (S.D.N.Y. Oct. 23, 2003) ...................................................................................- 18 -

**Treatises**

Restatement [Second] of Torts §46 Comment d) ...................................................................- 28 -

Jackson v. City of New York, et al. 10-CV-02530

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITON TO SUMMARY JUDGMENT

### Preliminary Statement

Plaintiff Nancy Jackson brings this action for claims that arise from an incident on March 7, 2009 at 146-20 Rockaway Boulevard in Queens, New York at which time defendants violated her rights as secured by 42 U.S.C. §§1983, 1985 & 1986, and by the Fourth, Fifth and Fourteenth Amendment Equal Protection and Due Process Clauses of the United States Constitution and for rights secured under the laws and Constitution of the State of New York.  Accordingly, defendants' motion for summary judgment should be denied in its entirety.

### STATEMENT OF FACTS

For the sake of judicial economy Plaintiff incorporates the exhibits annexed to defendants' Notice of Motion.

On or about March 7, 2009, Nancy Jackson was walking in a plaza on her way to Dee & L's Pizza Plus (hereinafter "Pizza Shop") located at or near 146-20 Rockaway Boulevard, County of Queens, City and State of New York.  As she was walking on the narrow sidewalk she passed two NYPD Police Officers identified as P.O. Shawn Johnston and P.O. Danielle Campo. As Ms. Jackson passed by, these officers began to make lewd comments while staring at her chest.  Ms. Jackson did her best to ignore the officers and proceeded to the Pizza Shop. (Amd. Compl. ¶21; Ex.4, p. 81 lln. 10-15)

Once inside the Pizza Shop Ms. Jackson joined her friend Ms. Adrianna McNeil and they proceeded to eat their meal.  Approximately, three minutes later P.O. Johnston and his partner P.O. Remigio entered the Pizza Shop, shortly after entering the shop they singled out Ms. Jackson, and asked her for her identification. (Amd. Compl. ¶25; Ex.4, p. 93 lln. 6-p. 94 lln. 12).

Jackson v. City of New York, et al. 10-CV-02530

He then told her that she would have to leave the premises within five to ten minutes and pointed to a sign on the wall that stated "[e]ating time 5-10 minutes".[1]  The owner of the Pizza Shop, Mr. Ajman Chaudhry, was standing behind the counter and informed officers Johnston and Campo that it was okay for Ms. Jackson to stay as she has been a customer for many years. (Amd. Compl. ¶24; Ex.4, p. 95 lln. 7-15).

Despite this assurance from the owner, P.O. Johnston persisted and demanded to see Ms. Jackson's identification.  Ms. Jackson spoke to her in a normal voice and told him that she did not have to give show him her identification and informed the officers that she did not have her identification on her person, that it was in her car, and that she was willing to go to the car and retrieve it to produce to them. (Amd. Compl. ¶25-26; Ex.4, p. 98 lln. 6-14)

Upon hearing this P.O. Johnston stated that no one in the Pizza Shop was leaving without showing him identification and placed a call over his radio for "back-up".  Ms. Jackson stated again that she did not have identification on her person and that she was going to her car to get it and began to pack her food and walk towards the door.  At this time P.O. Remigio put his arm across the door, at Ms. Jackson's chest height, and told her that she wasn't going anywhere, that P.O. Johnston was not finished with her and no one was to leave without showing identification. (Amd. Compl. ¶27-28; Ex.4, p. 95 lln. 17-p. 96 lln. 25).

Ms. Jackson left the establishment to retrieve her identification from her car.  At this time without provocation or instigation P.O. Dammacco jumped on Ms. Jackson's back.  P.O. Dammacco made no statements of identification as a police officer before his attack and there were no requests by him for Ms. Jackson to stop prior to his actions. (Amd. Compl. ¶31-32; Ex.4, p. 103 lln. 4-p. 105 lln. 15).

---

[1]According to P.O. Johnston's Memo Book entries for March 7, 2009, there existed no criminal activity in the Pizza Shop and there existed no calls requesting a police presence at that location P.O. Johnston and his partner were there to perform a "Community Visit". (See, Ex. 6, Johnston Memo Book-NYC 250).

Jackson v. City of New York, et al. 10-CV-02530

With no knowledge of who was making this attack on her person, Ms. Jackson twisted her body and P.O. Dammacco fell to the floor.  It was at this time that Ms. Jackson first realized that her assailant was an NYPD police officer. (Amd. Compl. ¶31-33; Ex.4, p. 103 lln. 4-p. 105 lln. 15).

P.O. Dammacco instantly grabbed Ms. Jackson by her arms as several other officers arrived and began to restrain her.  Ms. Jackson, confused and frightened by the situation and the unprovoked attack by the officers, pulled away in defense.  The officers pushed her to the ground and began to punch and kick her about the back and stomach.[2] (Amd. Compl. ¶34-36; Ex.4, p. 105 lln. 23-p. 109 lln. 20).

The officers rear cuffed, a patrol car was requested and P.O. Johnston and P.O. Dammacco threw Ms. Jackson in the rear seat on her back causing her handcuffs to tighten under the pressure of her body weight. (Amd. Compl. ¶37-38; Ex.4, p. 138 lln. 1-9 & p. 142 lln. 14-21); (Ex. 9, CCRB Interview of P.O. Johnson, ¶5).

Despite her pleas for assistance the officers did nothing to help her[3].  Ms. Jackson, in an attempt to turn over and stop the continual tightening of the cuffs kicked her legs forward.  She achieved her goal of turning her body over to her stomach; however, her efforts also caused the window to become dislodged. (Amd. Compl. ¶38-40; Ex.4, p. 138 lln. 3-18).

Ms. Jackson was taken to the 113th Precinct.  Upon arrival, she was pulled out of the backseat of the patrol car by her arms with such force that her pants were pulled down exposing her full buttocks.  Ms. Jackson requested that someone help her pull up her pants, but her request were refused and she was made to stand outside with her buttocks exposed.  A female officer

---

[2] Ms. Jackson's injuries are documented in her medical records.

[3] Sgt. Alex Montesquieu supervised the detention and arrest of Ms. Jackson, including authorizing the officers to classify her as an Emotionally Disturbed Person (EDP) and ordering that she be taken to the hospital for a Mental Evaluation, despite having full knowledge of the facts surrounding her arrest including the lack of probable cause for her arrest.

came out of the station house and was going to assist her, but another unidentified officer who was watching told the female officer to leave her alone.[4]  Ms. Jackson was made to stand outside with her buttocks exposed for approximately 20 minutes until an ambulance came and the Emergency Medical Technician (EMT) assisted her with her pants. (Amd. Compl. ¶41-43; Ex.5, p. 27 lln. 5-p. 28 lln. 25).

Ms. Jackson was taken to Queens Hospital Center for treatment of her injuries.  The Queens Hospital records state that she complained of paint to her shoulder, stomach, back, wrists and hands.  Her wrists were so swollen and tender she was initially diagnosed with a Scaphoid fracture and given and arm splint.  The records indicate physical injuries and bruises to her wrists and both sides of her upper back.  Her discharge record states she was given Tylenol and Motrin for the pain and was to report to the Hand Clinic for her wrists.  (See, Queens Hospital Center Medical Records, Ex. 10 p. NJ26, 27, 30, 33, 40 & 41).

Ms. Jackson was arraigned and charged with numerous offenses including: two felony counts of assaulting a police officer, two counts of assault in the third degree, resisting arrest and criminal mischief—intent to damage property. All charges were dismissed.


### **STANDARD OF REVIEW**

A motion for summary judgment "may not be granted unless the court determines that there is no genuine issue of material fact and that the undisputed facts warrant judgment for the moving party as a matter of law." *Howard v. Schoberle,* 907 F. Supp. 671, 676 (S.D.N.Y. 1995).  In determining whether summary judgment is appropriate, "a court must resolve all ambiguities and draw all reasonable references against the moving party." *Funnye v. Paragon Sporting Goods Co.*, No. 98 Civ. 7731, 2001 U.S. Dist. LEXIS 3337, at *3 (S.D.N.Y. Mar. 27,

---

[4] Ms. Jackson's mother and Ms. Adrianna McNeil were present and witnessed the humiliation of Ms. Jackson in this exposed state and were not permitted to assist her.

Jackson v. City of New York, et al. 10-CV-02530

2001).  "If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Howard*, 907 F.Supp. at 677 (citing *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).  In deciding a summary judgment motion, "the district court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the moving party opposing summary judgment, to draw all reasonable inferences in favor of the party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).  "[A]ll doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988).

As demonstrated below, defendants' summary judgment motion should be denied as there are triable issues of material facts in Plaintiff's claims.

## ARGUMENT

### POINT I

**PLAINTIFF'S UNLAWFUL SEIZURE AND FALSE ARREST CLAIMS ARE VALID AND SUMMARY JUDGMENT SHOULD BE DENIED**

Defendants first argue that summary judgment should be granted on the basis that there existed 'reasonable suspicion of criminal activity' at the time of Ms. Jackosn's seizure. However, defendants provide no evidence to support this allegation and fail to provide an argument to support justification of Ms. Jackson's initial stop or the basis of probable cause for her arrest that resulted therefrom.  As a result, reasonable suspicion did not exist for the initial

Jackson v. City of New York, et al. 10-CV-02530

seizure of Ms. Jackson nor did probable cause exist for her resulting arrest and defendants' request for summary judgment should be denied[5].

**A.     There Existed No Reasonable Suspicion for Plaintiff's Initial Seizure**

The United States Supreme Court has held that there are three (3) types of 'police-citizen' encounter:

> "(1) consensual encounters which do not implicate the Fourth Amendment, *see, e.g., Michigan v. Chesternut,* 486 U.S. 567, 574-76, 108 S.Ct. 1975, 1979-81, 100 L.Ed.2d 565 (1988); *INS v. Delgado,* 466 U.S. 210, 218-21, 104 S.Ct. 1758, 1763-65, 80 L.Ed.2d 247 (1984); (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity, *see, e.g., United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); and (3) arrest, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause. *See, e.g., Hayes v. Florida,* 470 U.S. 811, 815-16, 105 S.Ct. 1643, 1646-47, 84 L.Ed.2d 705 (1985); *Dunaway v. New York,* 442 U.S. 200, 212-16, 99 S.Ct. 2248, 2256-59, 60 L.Ed.2d 824 (1979). *United States v. Bloom,* 975 F.2d 1447, 1450-51 (10th Cir.1992)".

*Unites States v. Davis*, 94 F.3d 1465, 1468 (1996).  In the matter before the bar the second type of 'police-citizen' encounter will be the focus.  The *Davis* court goes on to state "[a] seizure by means of an investigative detention `is constitutional only if supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity' *Lambert,* 46 F.3d at 1069 (quoting, *United States v. Ward,* 961 F.2d 1526, 1529 (10th Cir.1992) (quoting *Reid v. Georgia,* 448 U.S. 438, 440; 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890) person seized is engaged in

---

[5] Defendants have not addressed the initial seizure of Ms. Jackson by P.O. Johnston inside the pizzeria and have presented no arguments for its justification in their Memorandum of Law. However, as the events have been addressed in counsel McCann's 56.1 statement as a factual basis for their Memorandum of Law the initial seizure will be address herein.

criminal activity." *Id*., citing, *Lambert,* 46 F.3d at 1069 (quoting, *United States v. Ward,* 961 F.2d 1526, 1529 ( (1980) (per curiam))).

It has been routinely held by the U.S. Supreme Court that. "[a]n officer who 'stops' and briefly detains a person for questioning 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). Further, while an investigative detention does not require probable cause, "…it does demand something more than an inchoate and unparticularized suspicion or `hunch.'" *United States v. Melendez-Garcia,* 28 F.3d 1046, 1051 (10th Cir.1994).

Here, Ms. Jackson has testified that she was seated in the pizzeria eating with her friend when P.O. Johnston entered and asked her for her identification. (Amd. Compl. ¶25; Ex.4, p. 93 lln. 6-p. 94 lln. 12). When P.O. Johnston approached Ms. Jackson and asked her for her identification he committed a Fourth Amendment seizure. The court in *Brown*, held that "[w]hen the officers detained appellant for the purpose of requiring [her] to identify [her]self, they performed a seizure of [her] person subject to the requirements of the Fourth Amendment." *Brown v. Texas*, 443 U.S. 47, 50 (1979). The *Davis* court went further to state that, "[w]hile an officer does not violate the Fourth Amendment simply by approaching an individual in a public place and asking him questions, the individual 'need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.'" *United States v. Davis*, 94 F.3d 1465, 1469 (1996), citing, *Florida v. Royer,* 460 U.S. 491, 497-98, 103 S.Ct. 1319, 1323-24, 75 L.Ed.2d 229 (1983) (plurality opinion) (citing *Terry,* 392 U.S. at 32-33, 88 S.Ct. at 1885-86 (Harlan, J., concurring); *id.* at 34, 88 S.Ct. at 1886.

Jackson v. City of New York, et al. 10-CV-02530

Ms. Jackson testified that after P.O. Johnston asked her for her identification she refused and gathered her food an attempted to leave. (Amd. Compl. ¶25-26; Ex.4, p. 98 lln. 6-14)[6]. When she attempted to leave P.O. Remegio put up his arm and blocked her from leaving. (Amd. Compl. ¶27-28; Ex.4, p. 95 lln. 17-p. 96 lln. 25).  The court has held that a person, "… may not be detained even momentarily without reasonable, objective grounds for doing so; and [the person's] refusal to listen or answer does not, without more, furnish those grounds. *United States v. Davis*, 94 F.3d 1465, 1469 (1996), citing, *Florida v. Royer*, 460 U.S. 491, 498 (1983).  The *Dunaway* court goes on to state, "a police confinement which . . . goes beyond the limited restraint of a *Terry* investigatory stop may be constitutionally justified only by probable cause." *Florida v. Royer*, 460 U.S. 491, 498 (1983), citing, *Dunaway* v. *New York,* 442 U. S. 200 (1979).

As stated above, Ms. Jackson was seated at table in the pizzeria eating her food when P.O. Johnston approached her and asked her for her identification.  In accordance with the prevailing case law she was within her rights to both refuse to comply and refuse to answer his inquiry.  As Ms. Jackson was not engaged in any criminal activity nor was she suspected of being involved in any criminal activity P.O. Johnston had no 'reasonable suspicion' to detain her any further beyond his initial request.  As he persisted in statin she could not leave and his partner denied her egress from the pizzeria the seizure went beyond the limits of Terrry investigatory stop and as P.O. Johnston had no probable cause to justify the seizure he violated

---

[6] P.O. Johnston has testified that he was conducting a Narcotics investigation and Ms. Jackson interfered called him a "Fucking Pig".  However, P.O. Johnston's Memo Book gives no reference or mention of an investigation and actually states he was there to performing a 'community visit' (See, Johnston Memo Book, Ex. 6, p. NYC250).  Further, that allegation that Ms. Jackson called him a name gives him no foundation to arrest her as the, "Supreme Court has held that 'the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Stearns v. Clarkson*, 615 F.3d 1278, 1283 (2010), citing, *City of Houston v. Hill,* 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). Thus, "it is [not] objectively reasonable to arrest someone for . . . criticizing the police," and "not every epithet directed at a police officer constitutes `disorderly conduct.'" *Elbrader v. Blevins,* 757 F.Supp. 1174, 1181, 1182 (D.Kan.1991).

Ms. Jackson's Fourth Amendment constitutional rights.  As such defendants' motion should be denied in its entirety.

**B.     There Was No Probable Cause for Plaintiff's Arrest**

As there existed no reasonable suspicion that Ms. Jackson was engaged in criminal activity, there also exists no probable cause for her arrest.

**1.     P.O. Dammacco Had No Reasonable Suspicion of Criminal Activity**

As Ms. Jackson was leaving the pizzeria P.O. Johnston made a call on his radio for "non-emergency back-up".  As defendants' have stated in their papers P.O. Johnston's call for 'non-emergency' backup is undisputed.  P.O. Dammacco testified that he was located in a van with Sgt. Montesquieu and could see the pizzeria. (Ex. 2, p. 30 lln. 15-19).  P.O. Dammacco, further testified that when he exited the van he could see P.O. Johnston immediately and when he first saw Ms. Jackson she was walking. (Ex. 2, p. 33 lln. 12-p. 35 lln. 6).  He further testified that he had no indication as to what offense Ms. Jackson had committed and the only thing he observed was Ms. Jackson not stopping while P.O. Johnston was asking her to. (Ex. 2, p. 36 lln. 2-14).  He further testified, that Ms. Jackson was talking to herself saying she did not have to stop and all she wanted to do was "eat her french fries". (Ex. 2, p. 30 lln. 19-23).  P.O. Dammacco further testified that he repeatedly asked her to stop and when he saw that she wasn't going to stop her grabbed her arms and attempted to place her in handcuffs. (Ex. 2, p. 37 lln. 2-p. 38 lln. 11).

As stated above, the *Davis* court stated that, "[w]hile an officer does not violate the Fourth Amendment simply by approaching an individual in a public place and asking him questions, the individual 'need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.'" *United States v. Davis*, 94 F.3d 1465, 1469 (1996), citing, *Florida v. Royer,* 460 U.S. 491, 497-98, 103 S.Ct. 1319, 1323-24, 75 L.Ed.2d 229 (1983) (plurality opinion) (citing *Terry,* 392 U.S. at 32-33, 88 S.Ct. at 1885-86 (Harlan, J., concurring); *id.* at 34, 88 S.Ct. at 1886.  Further, the court has held that a person, "… may not be

Jackson v. City of New York, et al. 10-CV-02530

detained even momentarily without reasonable, objective grounds for doing so; and [the person's] refusal to listen or answer does not, without more, furnish those grounds. *United States v. Davis*, 94 F.3d 1465, 1469 (1996), citing, *Florida v. Royer*, 460 U.S. 491, 498 (1983). P.O. Dammacco testified that he did not witness Ms. Jackson commit a criminal offense, he only witnessed her attempt to walk away when he and P.O. Johnston asked her to stop. Nor did Ms. Jackson make any aggressive moves towards him. (Ex. 2, p. 47 lln. 21-p. 38 lln. 7).

P.O. Dammacco, based on his sworn testimony, had no 'reasonable' basis to believe that Ms. Jackson was involved in or committing criminal activity before he grabbed her arms and tried to handcuff her. P.O. Dammacco had no independent knowledge or reasonable belief that Ms. Jackson had committed an offense and P.O. Johnston's call was for 'non-emergency' back-up indicating there wasn't an emergency and provided no description of a particular individual or a criminal offense. P.O. Dammacco's only account of what happened is that he saw Ms. Jackson walking away from the pizzeria, asked her to stop, and when she did not he grabbed her and arrested her. As such, he did not have 'reasonable suspicion' that Ms. Jackson was involved in criminal activity before he seized her in violation of her Fourth Amendment rights and defendants' motion for summary judgment should be denied in its entirety.

### 2.     There Was No Criminal Activity and No Probable Cause To Arrest

Probable cause is "a reasonable amount of suspicion, supported by circumstances sufficiently strong to justify a prudent and cautious person's belief that certain facts are <u>probably</u> true" Handler, J.G., *Ballentine's Law Dictionary: Legal Assistant Edition* (1994, Albany: Delmar Publishers), at p. 431.

It has been established that P.O. Johnston had no reasonable suspicion that Ms. Jackson was engaged in or about to be engaged in criminal activity at the time of her seizure in violation of her Fourth Amendment rights when she was harassed and prohibited from leaving the pizzeria by the officers. (Amd. Compl. ¶25-28; Ex.4, p. 95 lln. 17-p. 98 lln. 14). The seizure of Ms.

Jackson v. City of New York, et al. 10-CV-02530

Jackson continued when P.O. Johnston called for 'non-emergency' back-up and resulted in her physical detention and assault. (Amd. Compl. ¶27-28; Ex.4, p. 95 lln. 17-p. 96 lln. 25); (Amd. Compl. ¶31-36; Ex.4, p. 103 lln. 4-p. 109 lln. 20); (Ex. 2, p. 37 lln. 2-p. 38 lln. 11).   In accordance with the ruling in *Florida v. Royer*, "[i]n the absence of probable cause…" the seizure and arrest of Ms. Jackson "…was ineffective because there is no proof at all that a 'break in the chain' of illegality had occurred…[and her seizure and arrest should be deemed]… invalid as a matter of law." *Florida v. Royer*, 460 U.S. 491, 497 (1983), citing, *Royer v. State of Florida*, 389 So. 2d 1007, 1020 (1979).

Based upon the facts there exist no basis or foundation that there was 'a reasonable amount of suspicion, supported by circumstances sufficiently strong to justify a prudent and cautious person's belief' that Ms. Jackson was engaged in or had been engaged in criminal activity at the time of her illegal seizure and arrest.   As such, defendants' motion for summary judgment must be dismissed in its entirety.

## POINT II

### PLAINTIFF HAS A VALID MALICIOUS PROSECUTION CLAIM

Plaintiffs' has a valid malicious prosecution claim under both state and federal law as she was wrongly charged and prosecuted with malice.

The Second Circuit has held "…that '[f]reedom from malicious prosecution is a constitutional right that has long been clearly established." *Coto v. Pabon, et al.*, 2008 U.S. Dist. LEXIS 94564, *46, citing *Winn v. McQuillan*, 390 F. Supp 2d 385, 389-390 (S.D.N.Y. 2005) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003))   The *Coto* court went on to state "[c]laims for …malicious prosecution, brought under §1983 to vindicate the fourth and fourteenth amendment right to free from unreasonable seizures, are 'substantially the same' as

Jackson v. City of New York, et al. 10-CV-02530

claims for…malicious prosecution under [New York] state law.*" Coto v. Pabon, et al.*, 2008 U.S. Dist. LEXIS 94564, *46, citing *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003).   To state a claim of malicious prosecution under New York State law the plaintiff must show: 1) that the defendant initiated a criminal proceeding against plaintiff[7]; 2) that the proceeding was terminated in the plaintiff's favor; 3) there was no probable cause for the criminal charge; and 4) that the proceeding was instituted with malice. *Coto v. Pabon, et al.*, 2008 U.S. Dist. LEXIS 94564, *47, citing *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004); (citations omitted). Plaintiff can satisfy all four (4) prongs of the malicious prosecution test.

**A.     Plaintiff's Criminal Case Terminated in Her Favor**

It is true that there can be "no cognizable cause of action for false arrest or malicious prosecution under 42 U.S.C. §1983 unless a plaintiff proves that the underlying criminal conviction has been invalidated" *See*, *Heck v. Humphrey*, 512 US 477, 486-487 (1994). It is undisputed that plaintiff Jackson's criminal action was terminated in favor.  On January 31, 2011, approximately twenty (20) months after her wrongful arrest, the charges against Mr. Jackson were dismissed. (Ex. 11, Certificate of Disposition).

**B.     Probable Cause Did Not Exist to Prosecute Plaintiff on the Charges**

Probable cause is "a reasonable amount of suspicion, supported by circumstances sufficiently strong to justify a prudent and cautious person's belief that certain facts are <u>probably</u> true"  Handler, J.G., *Ballentine's Law Dictionary: Legal Assistant Edition* (1994, Albany: Delmar Publishers), at p. 431.  As stated above probable cause did not exist at the time of the arrest as there existed no reasonable suspicion that plaintiff Jackson was engaged in or had been engaged in criminal activity and there had been no 'break in the chain of illegality' at the time of her seizure and arrest, "[m]oreover, when there are significant evidentiary gaps or

---

[7] It is undisputed that a criminal matter was commenced against plaintiff.

Jackson v. City of New York, et al. 10-CV-02530

uncertainties, the police may not ignore them and simply make an arrest based on obviously spotty and uncorroborated evidence." See, e.g., *Oliveira v. Mayer,* 23 F.3d 642, 647-48 (2d Cir. 1994); ([t]he New York Court of Appeals has noted that 'the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 671 (2d Cir. 1996), citing, *Colon v. City of New York*, 60 N.Y.2d at 82, 455 N.E.2d 1248, 468 N.Y.S.2d 453 (citation omitted).  Plaintiff Jack may also prove that no probable cause exists by showing "…that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper police procedures". . *Coto v. Pabon, et al.*, 2008 U.S. Dist. LEXIS 94564, *47, citing *Williams v. City of New York*, 02 Civ. 3693, 2003 U.S. Dist. LEXIS 19078, 2003 WL 22434151 at *6 (S.D.N.Y. Oct. 23, 2003) (Motley, D.J.), aff'd, 120 Fed. Appx. 388 (2d Cir. 2005); accord, e.g., *Ramashwar v. Espinoza*, 2006 U.S. Dist. LEXIS130, 2006 WL 23481 at *7.

## C.     There Exists Malice on the Part of Defendants

Defendants are correct that malice can be inferred.  A jury can "…infer malice from a lack of probable cause which is sufficiently in dispute…" *Ostroski v. Town of Southland*, 443 F.Supp 2d 325, *340, citing *Lowth v. Town of Cheektowaga*, 83 F.3d 563, 573 (2d Cir. 1996).  The *Ostroski* court went on to state, "[i]n most malicious prosecution cases, a lack of probable cause—while not dispositive –tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause." *Ostroski v. Town of Southland*, 443 F.Supp 2d 325, *340, citing *Mesiti v.Wegman,* 307 A.D.2d 339, 341, 763 N.Y.S.2d 67 (2d Dep't 2003) ("[T]he jury was able to 'infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding.") (citing *Martin v. City of Albany,* 42 N.Y.2d 13, 17, 364 N.E.2d 1304, 396 N.Y.S.2d 612 (N.Y. 1977)) ([L]ack of probable cause generally raises an inference of malice sufficient to withstand summary judgment." *Ricuitti*

Jackson v. City of New York, et al. 10-CV-02530

*v. NYC Transit Authority*, 124 F.3d 123, 131 (2d Cir. 1997), citing, *Lowth v. Town of Cheektowaga*, 83 F.3d 563, 573 (2d Cir. 1996).   The charges against plaintiff Jackson were dismissed outright. (Ex.11).   The dismissal is a direct result of the "…lack of reasonable grounds for the prosecution" and "…raises an inference of malice sufficient to withstand summary judgment." *Id.*, citing, *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir.1994) (quoting, *Conway v. Village of Mount Kisco*, 750 F.2d 205, 215 (2d Cir.1984)).

As stated above, plaintiffs have shown through supported evidence that probable cause[8] did not exist, or at the minimum there are factual issues as to its existence, in the seizure, arrest and charge of plaintiff Jackson.   As such, malice can be inferred on the part of defendants in the prosecution of plaintiff on all charges.   Hence, defendants' motion summary judgment must be denied.

## POINT III

## PLAINTIFF HAS A VALID CLAIM FOR EXCESSIVE FORCE AND UNREASONABLE HANDCUFFING

Plaintiff Jackson herein particularizes that during her arrest she was subjected to excessive force by defendants Campo, Dammacco, and Johnston which resulted in her being kicked about her back and sides, kneed in her stomach, and purposely placed on her back while she was hand cuffed in the rear causing the handcuffs to tighten under her body weight. (Ex. 4, p. 137 lln. 7-p.150 lln. 13).

### A.      Plaintiff's Claim of Excessive Physical Force and Failure to Intervene

---

[8] "A reasonable amount of suspicion, supported by circumstances sufficiently strong to justify a prudent and cautious person's belief that certain facts are <u>probably</u> true"   Handler, J.G., *Ballentine's Law Dictionary: Legal Assistant Edition* (1994, Albany: Delmar Publishers), at p. 431.

Jackson v. City of New York, et al. 10-CV-02530

The United States Supreme Court has recognized on many occasions, "…that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Determining the "reasonableness" of the force used requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id*. Finally, the "reasonableness" of the particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*., citing, *Terry v. Ohio,* 392 U.S. 1, 20-22 (1968).

Here, Dammacco testified that he did not witness Ms. Jackson commit a criminal offense, he only witnessed her attempt to walk away when he and P.O. Johnston asked her to stop. Nor did Ms. Jackson make any aggressive moves towards him. (Ex. 2, p. 37 lln. 21-p. 38 lln. 7). In response to this Dammacco testified that he repeatedly asked her to stop and when he saw that she wasn't going to stop her grabbed her arms and attempted to place her in handcuffs. (Ex. 2, p. 37 lln. 2-p. 38 lln. 11). Officer Johnston testified that he, Dammacco and Campo grabbed Ms. Jackson and Campo to put handcuffs on her but were not going to arrest her and forced her to the ground to achieve this goal. (Ex. 1, p. 52 lln. 9-p.58 lln. 13). The court has held that a person, "… may not be detained even momentarily without reasonable, objective grounds for doing so; and [the person's] refusal to listen or answer does not, without more, furnish those grounds. *United States v. Davis*, 94 F.3d 1465, 1469 (1996), citing, *Florida v. Royer*, 460 U.S. 491, 498 (1983). As officers of the law Johnston, Dammacco and Campo are believed to be properly trained by the New York City Police Department ('NYPD') and knowledgeable of the proper procedures and rights of the individual during a Terry investigatory stop. However, the facts as testified to by the defendants do not support a reasonable circumstance to grab, accost,

Jackson v. City of New York, et al. 10-CV-02530

and handcuff plaintiff Jasckson; especially given that Dammacco testified that she did not make any threatening gestures towards him or the other officers.

Furthermore, Stg. Montesquieu was privy to incident at the same time as Dammacco, when Johnston placed the call for 'non-emergency' back-up, since he was in the van with Dammacco and could hear and see all the Dammacco did as their van was parked 10-15 feet away from the pizzeria.  (Ex. 2, p.25 lln.16-p.28 lln. 19).  It took Dammacco only a few seconds to walk to where Johnston and Ms. Jackson were and close enough for Sgt. Montesquieu to see what was happening. (Ex. 2, p.25 lln.16-p.28 lln. 19).  Sgt. Montesquieu could see that Ms. Jackson made no threatening gestures to the officers and could have requested additional information from Johnston over the radio or given the number of officers on the scene radioed them to stand down since there was such an overwhelming presence.

It is undisputed that prior to Dammacco grabbing her arm outside the pizzeria, Ms. Jackson had made not threatening gestures to the officers.  It is also undisputed that at this time she was seized by Dammacco, Ms. Jackson had not committed and was not committing a criminal offense.  It is also undisputed that Ms. Jasckson was struck repeatedly by officers while she was being cuffed and the officers identified as being closest to her at that time are Dammacco, Campo and Johnston (Ex. 2, p. 37 lln. 2-p. 38 lln. 11), (Ex. 1, p. 52 lln. 9-p.58 lln. 13), (Ex. 10, NJ24-NJ41).  Ms. Jackson was also kneed in the stomach by Dammacco after claiming that she was pregnant. (Ex. 4, p. 137 lln. 21-24)  Paying "careful attention to the facts and circumstances of [this] particular case, including the severity of the crime at issue…" there exists no "reasonableness" for the force used against plaintiff or a reason why Sgt. Montesquieu did not intervene to halt or prevent further constitutional violations against plaintiff as he could clearly view the events unfoldng.  Hence, defendants motions should be denied in its entirety.

**B.**     **Plaintiff's Claim of Unreasonable Handcuffing and Deliberate Indifference**

In evaluating the reasonableness of handcuffing, a court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendant ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Lynch ex rel. v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (SDNY 2008), citing, *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (EDNY 2005).  Plaintiff meets all portions of this criteria.

Ms. Jackson testified that on the way to being placed in the police vehicle she informed the officers that the handcuffs were too tight and asked if they could loosen them. (Ex. 4, p. 141 lln. 13-20).  She also testified that the officers placed/threw her in the back seat of the police vehicle. (Ex. 4, p. 138 lln. 4-9)[9].  She further testified that when she was placed on her back that her body weight made the cuffs tighter and she was "screaming and crying, asking them could they loosen the handcuffs, because my weight was making the handcuffs even more tight." (Ex. 4, p. 138 lln. 4-9).  When the officers would not help her she tried to turn herself over and with her feet and the passenger side rear window was dislodged[10]. ((Ex. 4, p. 138 lln. 11-18), (Ex. 5, p. 25 lln. 10-p. 26 lln. 21).  Officer Dammacco testified that he and Sgt. Montesquieu were present in front of the passenger side rear window when it was dislodged. (Ex. 2, p. 50 lln. 2-9).  Office Johnston testified that he, Dammacco and Campo were present and assisted in getting Ms. Jackson in the backseat of the police vehicle and rode back to the precinct in the vehicle with Ms. Jackson. (Ex. 1, p.61 lln. 3-p. 62 lln. 4).  Officer Jonhson stated to the CCRB that he assisted Johnston and Dammacco in getting Ms. Jackson in the back seat. (Ex. 9, CCRB Interview of P.O. Johnson, ¶5). Ms. Jackson testified that she was in so much pain that she passed out. (Ex. 4, p. 143 lln. 22-25).  Officer Dammacco further testified that during the

_____

[9] Dammacco testified that his body weight at the time of the incident was between 210-220 lbs and that Ms. Jackson appeared to weigh more than him. (Ex. 2, p. 42 lln. 5-14).  Additionally, Ms. Jackson testified that her weight on March 7, 2009 was approximately 246 lbs. (Ex. 4, p. 13 lln. 9-13).

[10] Ms. Jackson was unsuccessful in turning herself over and rode to precinct on her back.

transport of Ms. Jackson to the precinct he was driving the van one car length in front of the police vehicle that carried Ms. Jackson and could hear her screams over the traffic. (Ex. 2, p. 51 lln. 14-25).   Additionally, Dammacco testified that Ms. Jackson's legs were hanging out of the window on the drive back to the precinct. (Ex. 2, p. 51 lln. 14-25).   After arriving at the precinct Ms. Jackson was removed from the vehicle and the pants she was wearing rolled down revealing her buttocks; she was made to wait outside the precinct with her pants down for several minutes. (Ex. 4, p. 146 lln. 15-p. 147 lln. 10).   Approximately 20 minutes later an ambulance arrived and transported her to the hospital. (Ex. 4, p. 150 lln. 14-16).   It was clear that Ms. Jackson was too large to fit in the back seat of the police vehicle properly yet the officers left her on her back with her own body weight causing the handcuffs to tighten and ignoring her pleas for assistance.

Further, Ms. Jackson's medical records state clearly that her hands and wrists were so swollen and tender they couldn't get a clear reading on the x-ray and believed she had a Scaphoid Fracture and gave her a splint for her arm, made an appointment for her to attend the hand clinic and prescribed pain medication. (Ex. 10, NJ24-NJ41).   The medical records further reflect that her back area was swollen and tender and the notes state that she was assaulted by the police. (Ex. 10, NJ24-NJ41).

Ms. Jackson satisfied all three prongs of the criteria as stated in Lynch and demonstrated deliberate indifference on the part of the officers.   As such, defendant's motion should be denied in its entirety.

## POINT IV

### DISPUTED ISSUES OF FACT AND LACK OF PROBABLE CAUSE TO ARREST PRECLUDE SUMMARY JUDGMENT ON THE ISSUE OF QUALIFIED                                    IMMUNITY

Defendants argue alternatively that they are entitled to qualified immunity, however, it is well established that the qualified immunity defense is available "only in those cases where the facts

Jackson v. City of New York, et al. 10-CV-02530

concerning the availability of the defense is undisputed; otherwise jury consideration is normally required." *Oliveria v. Mayer*, 23 F.2d 642, 649 (2d Cir.1994). *See* also *Lennon v. Miller*, 66 F.3d 415, 420 (2d Cir. 1995) ("Disputes over reasonableness are usually fact questions for juries*"); Kirk v. Metropoliltan Transp. Auth.*, No. 99 Civ. 2787, 2001 WL 258605, at *7 (S.D.N.Y. March 14, 2001)("As factual questions must not be resolved in a summary judgment motion, the question of qualified immunity is a triable issue that must be left for the jury to answer."  Indeed, the Second Circuit has reaffirmed the continuing validity of the above principles and reversed that grant of summary judgment on qualified immunity grounds.  *See McClellan v. Smith*, 439 F.2d 137 (2d. Cir. 2006) ("The District Court generally failed to heed the rule that resolution of genuine factual issues is inappropriate on motion for summary judgment based on qualified immunity").

## A.    Disputed Issues of Fact Preclude Judgment on the Issue of Qualified Immunity

Defendants are not entitled to Qualified Immunity.  Where it has been established that the plaintiff was arrested without a warrant and without probable cause, "…the question raised by the qualified immunity defense is whether it was objectively reasonable for the officers to believe they did have probable cause.  Referring to this standard as "arguable" probable cause." *Zellner v. Summerlin*, 494 F. 3d 344, 2007 U.S. App LEXIS 17272, 57.  The *Zellner* court went on to state that, "[a]rguable probable cause exists when "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Id*.; *citing Lee v. Sandberg,* 136 F.3d 94, 102 (2d Cir.1997).  However, "'Arguable' probable cause" must "not be misunderstood to mean 'almost' probable cause." *Zellner v. Summerlin*, 494 F. 3d 344, 2007 U.S. App LEXIS 17272, 58; *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir. 2007)…"[t]here should be no doubt that probable cause remains the relevant standard.  If officers of reasonable competence would have to agree that the information possessed by the

Jackson v. City of New York, et al. 10-CV-02530

officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer. *Id.* (emphasis added); *see also Cerrone,* 246 F.3d at 202-03.

Here, the officers lacked a reasonable suspicion that criminal activity was afoot or cause to believe that a crime had been committed.  It was testified too that Dammacco did not witness Ms. Jackson committing a criminal offense, or making threatening gestures towards him or anyone else.  Further, the seizure of Ms. Jackson was ineffective as there was no 'break in the chain of illegality' that had occurred with Johnston.  Sgt. Montesquieu was privy to the same information as Dammacco and made not attempts to intervene to prevent Ms. Jackson's rights from being violated.

On the grounds of the above information officers of reasonable competence would have to agree that the information possessed by defendant officers at the time of the arrest did not equate to arguable probable cause or even a strong suspicion…"to establish probable cause to arrest…it must constitute more than rumor, suspicion, or even a strong reason to suspect.'" *United States v. Fisher,* 702 F.2d 372, 375 (2d Cir. 1983); (citations omitted); *Henry v. United States*, 361 U.S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed. 2d 134 (1959); *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).  As such, defendants are not entitled to Qualified Immunity.  As such, there is a triable issue of as to the issue of qualified immunity and defendants' motion summary judgment should be denied.

## POINT V

## PLAINTIFF HAS A VALID STATE LAW CLAIMS AS ASSERTED AGAINST DEFEDANTS

First, Defendants are correct in stating that a Notice of Claim is a mandatory condition precedent to bringing a tort claim against the City of New York. *See*, Gen. Mun. Law

Jackson v. City of New York, et al. 10-CV-02530

§50-e, *Fincher v. County of Westchester*, 979 F. Supp 989, 1002 (SDNY 1997).  Additionally, GML §50-e (a) provides that a Notice of Claim must be filed within ninety (90) days after the claim arises, "N.Y. Gen Mun Law 50-e…requires that a plaintiff must file a notice of claim prior to the commencement of an action against a municipality, and must serve the notice of claim within 90 days after the claim arises." *Warner v. Village of Goshen Police Dept.*, 256 F. Supp 171, 175 (SDNY 2003), *citing Fincher v. County of Westchester*, 979 F. Supp 989, 1002 (SDNY 1997).  The purpose of filing a timely Notice of Claim, "…is to enable authorities to investigate, collect evidence and evaluate the merit of the claim", further, "…the statute does not require that 'those things be stated with literal nicety and exactness…'". *Coleman v. City of Niagara Falls*, 09-CV-157, 2010 U.S. Dist. LEXIS 73089 *20, *citing Brown v. City of New York*, 718 NYS 2d. 4 (2000).  The *Coleman* court goes on to state, "…[t]hat the test of the sufficiency of a Notice of Claim is merely 'wether it includes information sufficient to enable the city to investigate'…'[n]othing more may be required…'". *Id.*  Additionally, when, "…assessing the sufficiency of a notice of claim, the court may look to evidence adduced at the 50-h hearing." *Coleman,* 2010 U.S. Dist. LEXIS 73089 *20, *citing Goodwin v. New York City Housing Athority*, 42 A.D. 3d 63 (1st Dept. 2007).

Plaintiff would argue that all information regarding the named defendants were brought at the 50-h hearing and it should be considered as satisfying the requirements of the Notice of Claim.  (Ex. 5).  The recent holding in *Holoman v. City* and its predecessors have held that "General Municipal Law ('GML') §50-e makes unauthorized an action against individuals who have not been named in a notice of claim…".  The Notice of Claim in this matter states only "The City of New York" in the caption for defendants/respondents as that was accurate information available at the time of the filing.  In fact, the knowledge as to all of the officers who were involved in this matter did not come to be known until January 31, 2011 when the CCRB had completed its investigation and released the file to the Queens County District Attorney's

Jackson v. City of New York, et al. 10-CV-02530

Office.  Prior to that the names of some officers were released during the discovery phase of the criminal matter.

Despite the holding in the *Holloman* court plaintiff's state law claims should not be dismissed.  The purpose of the Notice of Claim "…is to enable authorities to investigate, collect evidence and evaluate the merit of the claim". *Coleman*, 2010 U.S. Dist. LEXIS 73089 *20, *citing Goodwin v. New York City Housing Athority,* 42 A.D. 3d 63 (1st Dept. 2007).  It is also to inform the municipality whenever a matter arises in which it has a statutory obligation to indemnify the individual, such as police officers.  In the case at bar the officers are sued in both federal and state court claims.  As such, if the Notice of Claim is stuck down as defendants are requesting, the condition precedent of a filing of a proper Notice to all state court actions against the City of New York will not have been met and will release the municipality from liability for these officers on the state claims and its obligation to indemnify them should they be found liable.  However, plaintiff's Amended Complaint has named the officers in both their professional and personal capacity.  (Def's Ex. A, ¶11, 12, 13 & 14).  As such, the state claims against the individuals: Shawn Johnston, John Dammacco, Danielle Campo and Alex Montesquieu are still valid as claims against these individuals do not require a Notice of Claim.

Additionally, GML §50-e(6) allows that:

> At any time after the service of a notice of claim and at any stage of an action or special proceeding to which the provisions of this section are applicable, a mistake, omission, irregularity or defect made in good faith in the notice of claim required to be served by this section, not pertaining to the manner or time of service thereof, may be corrected, supplied or disregarded, as the case may be, in the discretion of the court, provided it shall appear that the other party was not prejudiced thereby.

As defendants have been engaged in litigation of this matter for more than two years they cannot state that they are prejudiced.  As such, should this court find that plaintiff's Notice of Claim should be stricken she will request leave of this court to make an application in the State court to Amend the caption to include the named officers.  As such, defendants' motion should be dismissed in its entirety.

## A.      Plaintiff Has a Valid IIED and NEID Claim

First, Under New York law, the tort of IIED has four elements: 1) extreme and outrageous conduct; 2) intent to cause, or disregard a substantial probability of causing, sever emotional distress; 3) a causal connection between the conduct and injury; and 4) severe emotional distress. *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993); see also*, Romero v. City of New York*, 839 F. Supp. 2d 588, 628-29 (EDNY 2012).

Specifically, defendants Johnston and his partner Remigio made lewd comments about Ms. Jackson's body and the defendants purposely humiliated her by exposing her buttocks in public and causing her trauma by assaulting her and refusing to help her while the handcuffs were tightening. (Ex. 4, p. 80 lln. 17-p. 82 lln. 24; p. 91lln. 1-25).; (Ex. 4, p. 146 lln. 15-p.148 lln. 10); (Ex. 4, p. 138 lln. 4-18).  These acts by defendants are clearly "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in civilized community." *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983), quoting, Restatement [Second] of Torts §46 Comment d); *Romero v. City of New York*, 839 F. Supp. 2d 588, 629 (EDNY 2012).

As such, plaintiff has a valid claim for Intentional Infliction of Emotional Distress.

Second, Defendants are incorrect in their analysis that plaintiff does not have a valid NIED claim.  Accordingly, "NIED may be found where the defendant owes a direct duty of care to the plaintiff, the breach of which causes unreasonable risk of physical harm to the plaintiff…".

*Frigerio v. United States of America*, 10-civ-9086, 2011 U.S. Dist LEXIS 80708 *34, (citations

Jackson v. City of New York, et al. 10-CV-02530

omitted).  The courts have held, "…that an individual who sustains physical injuries as a result of a tortfeasor's negligence may recover for pain and suffering -- physical or mental -- that is the natural and proximate result of the physical injuries." *Frigerio*, 2011 U.S. Dist LEXIS 80708 *34.  Additionally, "[a]s a narrow, interstitial cause of action, NIED allows for recovery for emotional harm in the *absence* of a contemporaneous physical injury. Id. at *35, (citations omitted).  Defendants had full knowledge that their actions were in violation of Ms. Jackson's rights as she was clearly not committing a criminal offense at the time of her arrest and their physical mistreatment of her and humiliation it is clear that the forseable consequences an arrest would have on plaintiff.  Their negligent breach of the duty they owed plaintiff Jackson was the proximate cause of her physical and emotional harm.  As such, plaintiff Jackson has a valid claim for NIED.

## POINT VI

## PLAINTIFF HAS A VALID CLAIM FOR NEGLIGENT HIRING, RETENTION, TRAINING AND SUPERVISION

Plaintiff asserts in ¶ 94 of his complaint that, "The City of New York…did negligently hire, retain, train and supervise Defendants Johnston, Campo, Dammacco and Montesquieu…individuals who were unfit for the performance of police duties on March 7, 2009, at the aforementioned location." (Def's Ex. A).  It is plaintiff's belief based on the facts of this matter that defendant City had full knowledge that Officers Johnston, Campo, Dammacco and Sgt. Montesquieu were unfit for the performance of police duties on March 7, 2009.  The egregious nature of the offenses against plaintiff's rights and the disregard the most basic of procedure are in themselves proof the defendants were not trained properly.  Upon learning of this action against defendants and the substantiated finding against Officer Johnston there is no evidence that the NYPD held a hearing to review office Johnston's performance or the violations

Jackson v. City of New York, et al. 10-CV-02530

caused to plaintiff. It is believed Sgt. Montesquieu has since received a promotion. As such, there is proof that there was negligence in their training and retention and summary judgment should be denied.

## [11]CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court deny defendants' motion to for summary judgment in its entirety, and for such other and further relief as the Court deems just and proper.

Dated:     New York, New York
            January 11, 2013

                    Robert M. Rambadadt
                    The Rambadadt Law Office
                    Attorney for Plaintiff Nancy Jackson
                    20 W. 20th Street—2nd Floor
                    New York, New York 10011
                    (646) 450-8049

By:        _____

                    Robert Rambadadt (RR9959)
                    Attorney for Plaintiff

Cc: (by Personal Delivery):
        Assistant Corporation Counsel
        Max McCann, Esq.
        *Attorney for Defendants*

---

[11] At this time plaintiff withdraws her claim for spoliation.