UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                                                                    :
NANCY JACKSON,                                                      :
                                                                    :        ORDER
                          Plaintiff,                                :
                                                                    :        10-cv-2530 (WFK) (SMG)
              -against-                                             :
                                                                    :
THE CITY OF NEW YORK, P.O. SHAWN JOHNSTON, :
P.O. DANIELLE CAMPO, P.O. JOHN DAMMACCO,         :
SGT. ALEX MONTESQUIEU, POLICE OFFICERS           :
JOHN DOE and RICHARD ROE (names and number of  :
whom are unknown at present) and other unidentified :
members of the New York City Police Department,    :
                                                                    :
                          Defendants.                               :
                                                                    :
--------------------------------------------------------------------X

**WILLIAM F. KUNTZ II, United States District Judge**

Nancy Jackson ("Plaintiff") commenced this action against the City of New York, Police

Officers Shawn Johnston, Danielle Campo, John Dammacco, John Doe and Richard Roe (names

and number of whom are currently unknown), Sergeant Alex Montesquieu, and other

unidentified members of the New York City Police Department (collectively "Defendants") in

connection with an incident where Plaintiff was arrested for two counts of assault on a police

officer, criminal mischief, resisting arrest, disorderly conduct, and harassment. Plaintiff seeks

recovery under 42 U.S.C. §§ 1983, 1985, and 1986 for violation of her rights under the Fourth,

Fifth and Fourteenth Amendments, and for violation of her rights under the Constitution of the

State of New York. Plaintiff asserts causes of action for unlawful seizure, false arrest, malicious

prosecution, excessive force and unreasonable handcuffing, failure to intervene in a

constitutional violation, deliberate indifference to medical needs, and related state law claims for assault, battery, intentional and negligent infliction of emotional distress, negligent hiring, retention, training, and supervision, and spoliation.[1]  Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons stated below, Defendants' motion is granted in part and denied in part.

## I.  Background

The parties sharply contest the facts in this case, although all agree that the causes of action arise from a series of events that occurred on March 7, 2009 in and around Dee & L's Pizza Plus, a pizzeria located on Rockaway Boulevard in Queens, New York ("Pizza Plus").  *See* Pl.'s 56.1 St., at ¶ 1.[2]  All parties also agree that both Plaintiff and Defendant Police Officer Shawn Johnston ("Officer Johnston") were present for the entire series of events.  In his sworn deposition testimony, Officer Johnston testified that he was present at the location to investigate possible narcotics transactions.  Defs.' 56.1 St., at ¶ 2.  However, Officer Johnston's Memo Book notes that he was present to "question patrons of pizza restaurant," which notes were characterized as part of "conduct[ing] a community visit" by the Civilian Complaint Review Board ("CCRB").  *See* Pl.'s 56.1 St., at ¶ 2; Ex. 6 to Pl.'s 56.1 St., at 2; Ex. 9 to Pl.'s 56.1 St., at 4.  Because the parties' respective versions of the ensuing events differ dramatically, the Court will address their versions separately.

---

[1] Plaintiff voluntarily withdraws her cause of action for spoliation.  Pl.'s Br. at 30, n.11.  Therefore, the Court dismisses this claim with prejudice.

[2] By citing to the parties' Local Civil Rule 56.1 Statements of Undisputed Facts, the Court incorporates by reference all relevant sources cited therein.

## A. Plaintiff's Version of Events

Plaintiff alleges that the interaction giving rise to her unlawful arrest began before she arrived at Pizza Plus, when she was walking on a sidewalk past Officer Johnston and Defendant Police Officer Danielle Campo ("Officer Campo"). Pl.'s Br. at 6.[3] She alleges that the officers made "lewd comments while staring at [Plaintiff's] chest." *Id.* About three minutes after Plaintiff entered Pizza Plus, Officer Johnston, Officer Campo and non-party Police Officer Remigio ("Officer Remigio") entered and asked Plaintiff to produce identification ("ID"). *Id.* at 6, 7; Pl.'s 56.1 St., at ¶ 3. After Plaintiff refused, Officer Johnston told Plaintiff that she would have to leave the premises within five to ten minutes, pointing to a sign on the wall, which read: "eating time 5–10 minutes." Pl.'s Br. at 7 (internal editing omitted). The owner of Pizza Plus informed Officer Johnston and the other officers that Plaintiff was a regular customer and was welcome to stay. *Id.* At this point, Officer Johnston again demanded to see Plaintiff's ID. *Id.* Plaintiff responded that she was under no obligation to produce her ID, but was nonetheless willing to retrieve her ID, which was in her car. *Id.* Officer Johnston refused to let Plaintiff, or anyone in Pizza Plus, leave without showing him ID. *Id.* He called to request non-emergency back-up to enforce this command. *Id.*; Pl.'s 56.1 St., at ¶ 5. Plaintiff attempted to leave Pizza Plus, but was blocked when Officer Remigio put his hand across the doorway and Officer Johnston told her that he was "not finished with her." Pl.'s Br. at 7; Pl.'s 56.1 St., at ¶ 4. Plaintiff eventually exited Pizza Plus against the officers' direction. Pl.'s 56.1 St., at ¶ 5.

When multiple police officers arrived in response to Officer Johnston's request for back-up, Defendant Police Officer John Dammacco ("Officer Dammacco") witnessed Plaintiff

---

[3] The Statement of Facts in Plaintiff's Memorandum of Law in Support of Plaintiff's Opposition to Summary Judgment is substantially broader than the facts asserted in Plaintiff's 56.1 Statement. Therefore, the Court will refer to pages within the Statement of Facts to supplement Plaintiff's 56.1 Statement.

walking away from Pizza Plus against Officer Johnston's orders. *Id.* at ¶¶ 6–7. Officer

Dammacco attempted to restrain Plaintiff by jumping on her back and assaulting her, without

first identifying himself or asking her to stop. *Id.* at ¶ 8; Pl.'s Br. at 7. Plaintiff, unaware that the

person on her back was a police officer, threw Officer Dammacco off her back. Pl's 56.1 St., at

¶¶ 8–9. Officer Dammacco instantly grabbed Plaintiff by her arms as several other officers

began to restrain her. Pl.'s Br. at 8. Confused and frightened, Plaintiff pulled away in defense,

at which point the officers began to punch and kick her back and stomach. *Id.* Defendant police

officers handcuffed Plaintiff and attempted to place her in a police van. Pl's 56.1 St., at ¶¶ 10–

11. Fearing for her safety following the physical struggle, Plaintiff refused to enter the van. *Id.*

Defendant police officers instead placed Plaintiff in a police car. *Id.* at ¶ 12. Once inside the car,

lying on her back, Plaintiff's body weight caused her handcuffs to tighten. *Id.* at ¶ 14. Trying to

alleviate the pain and loosen the handcuffs, Plaintiff attempted to turn herself over by kicking her

legs out and, in the process, dislodged the rear window of the police car. Pl's 56.1 St., at ¶ 14.

Over the course of the incident, Defendant police officers repeatedly struck Plaintiff,

including kneeing her in the stomach after Plaintiff falsely informed them that she was pregnant.

*Id.* at ¶¶ 16–20. In addition, Defendant police officers refused to loosen Plaintiff's handcuffs

after she complained that they were unreasonably tight and causing excessive strain and bruising

to her wrists. *Id.* at ¶ 22–23. Moreover, Defendant Sergeant Alex Montesquieu ("Sergeant

Montesquieu") authorized the officers to classify plaintiff as an Emotionally Disturbed Person

("EDP") and ordered that Plaintiff be taken to a hospital for a mental evaluation. *See*

Montesquieu Dep. Tr. at 29:7–13. Once the parties arrived at the 113th Police Precinct (the

"precinct"), Plaintiff was forced to stand outside for ten to twenty minutes with her pants pulled

down below her knees and her buttocks exposed. Pl's 56.1 St., at ¶ 24. Plaintiff was then

4

transported by ambulance to Queens Hospital Center (the "hospital"), to be treated for injuries sustained during her arrest. *Id.* Hospital records indicate physical injuries and bruises to Plaintiff's wrists and upper back. Pl.'s Br. at 9. She was given Tylenol and Motrin to treat the pain and a splint to stabilize her wrist, before being transported back to the precinct. *Id.*

Plaintiff was arraigned and charged with two counts of assault on a police officer, disorderly conduct, harassment in the second degree, resisting arrest, and criminal mischief. All charges were dismissed and sealed on April 21, 2011. *See* Ex. 11 to Pl.'s 56.1 St; Ex. F to Defs.' 56.1 St.

## B. Defendants' Version of Events

Defendants tell a very different version of the events at issue in this case. Officer Johnston alleges that he did not initiate any interaction with Plaintiff, but that Plaintiff interfered with his narcotics investigation at Pizza Plus by "coming within inches of his face" and calling him a "fucking pig." Defs.' 56.1 St., at ¶ 3. Plaintiff continued to act disorderly, drawing a crowd inside Pizza Plus, which prompted Officer Johnston to ask Plaintiff to produce her ID. *Id.* at ¶ 4. Plaintiff refused, making threatening gestures, and eventually left Pizza Plus along with many members of the crowd. *Id.* at ¶¶ 4–5. This disobedience prompted Officer Johnston to request non-emergency back-up. *Id.* at ¶ 5; Ex. 6 to Pl.'s 56.1 St., at 3. Once outside, Officer Johnston again asked Plaintiff to stop and produce her ID, but Plaintiff refused and attempted to flee. *Id.* at ¶ 6. Officer Dammacco, arriving in response to Officer Johnston's request for back-up, observed this interaction and attempted to restrain Plaintiff from behind. *Id.* at ¶ 7–8. Plaintiff threw Officer Dammacco off her back and proceeded to kick and struggle with him and other Defendant police officers. *Id.* at ¶¶ 9–10. Once the officers were able to secure Plaintiff in handcuffs, they attempted to place her in a police van but were unable to do so because of

Plaintiff's continued struggle. *Id.* at ¶ 11–12. Despite her ongoing struggle, during which she kicked and dented the door of a police car, Defendant police officers were eventually able to place Plaintiff in the car. *Id.* at ¶ 12–13. However, once inside, Plaintiff continued to struggle violently, eventually kicking out the rear window of the car. *Id.* at ¶ 14.

Plaintiff's behavior caused approximately $1,140 worth of damage to the police car and both Officer Dammacco and Officer Campo to seek medical treatment. *Id.* at ¶¶ 10, 15. Although Plaintiff alleges she was assaulted by police officers during her arrest, Plaintiff does not allege that any of the named individual Defendants participated in the purported assault. *Id.* at ¶¶ 16–20. Moreover, although Plaintiff alleges her handcuffs were unreasonably tight, she does not specifically allege which of the named individual Defendants handcuffed her and does not allege she informed anyone that the handcuffs were unreasonably tight. *Id.* at ¶¶ 21–23. Immediately upon Plaintiff's arrival at the precinct, an ambulance arrived to transport her to the hospital, where she was treated for injuries sustained during the arrest. *Id.* at ¶ 24.

## II. Discussion

### A. Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal citations and quotation marks omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment."). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

## B. Accepting Plaintiff's Version of the Facts as True, Defendants Lacked Reasonable Suspicion to Detain Plaintiff

Defendants move for summary judgment on Plaintiff's claim that she was unlawfully seized in violation of the Fourth Amendment. An individual is seized for purposes of the Fourth Amendment "when the officer, by means of physical force or show of authority, terminates or restrains [her] freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotation marks omitted). A police officer may stop and briefly detain a person (a "*Terry* stop") if the officer has "a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)) (internal quotation

7

marks omitted). Reasonable suspicion has been defined as something "more than an inchoate and unparticularized suspicion or hunch," but less than probable cause. *Id.* (internal quotation marks omitted).

To determine whether reasonable suspicion exists, the reviewing court must look at the totality of the circumstances, and "must evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Colon*, 250 F.3d 130, 134 (2d Cir. 2001) (internal quotation marks and citation omitted). In addition, "[i]n evaluating whether an investigative stop is reasonable under the Fourth Amendment, the reviewing court must determine whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Parker v. City of Long Beach*, No. 11-CV-5412, 2013 WL 596624, at *4 (E.D.N.Y. Feb. 15, 2013) (Feuerstein, J.) (quoting *United States v. Alexander*, 907 F.2d 269, 272 (2d Cir. 1990)).

The parties do not dispute that Plaintiff was first questioned by a police officer inside Pizza Plus, when Officer Johnston asked Plaintiff to produce her ID. Although Defendants argue that Plaintiff was not seized or detained inside of Pizza Plus, *see* Defs.' Surreply at 3–4, Defendants simultaneously argue that Officer Dammacco was justified in restraining Plaintiff because he "observed plaintiff walking away, *despite Officer Johnston's orders for plaintiff to stop.*" *Id.* at 4 (emphasis added). This fact belies Defendants' position. Whether or not Officer Remigio or any other police officer physically blocked the doorway with his arm, as Plaintiff claims, both parties agree that Defendants attempted to stop Plaintiff inside Pizza Plus. However, despite Defendants' inconsistency, Plaintiff was not actually detained until she was

outside on the sidewalk and grabbed by Officer Dammacco.[4] Therefore, the Court will evaluate whether the officers had a reasonable suspicion to justify the stop outside Pizza Plus.

Once outside, Defendants argue, Officer Dammacco had a reasonable suspicion sufficient to justify stopping Plaintiff because he "arrived at that location in response to Officer Johnston's request for backup and observed plaintiff walking away, despite Officer Johnston's orders for plaintiff to stop." *Id.* Defendants point to no case law to support the conclusion that these observations amount to reasonable suspicion. To the contrary, "individuals of whom the police have no reasonable suspicion of criminal activity have the right not to answer an officer's question, or even to run from the police, without those acts creating grounds to detain that individual." *Gilliard v. City of New York*, No. 10-CV-5187, 2013 WL 521529, at *5 (E.D.N.Y. Feb. 11, 2013) (Garaufis, J.) (quoting *People v. Bowden*, 87 A.D.3d 402, 403, 928 N.Y.S.2d 12, 13 (N.Y. App. Div. 1st Dep't 2011)). In addition, simply responding to a call for backup, without any information indicating the reason for needing backup or any description of the possible criminality afoot, does not create reasonable suspicion. *See, e.g., Mack v. Town of Wallkill*, 253 F. Supp. 2d 552, 558 (S.D.N.Y. 2003) (McMahon, J.) (arresting officer lacked probable cause to arrest plaintiff despite arriving on scene in response to request for backup where officer did not observe plaintiff committing a crime); *see also Colon*, 250 F.3d at 138 (concluding that police officers "clearly" lacked reasonable suspicion to stop and frisk an

---

[4] Plaintiff was arguably detained even before she was literally stopped by Officer Dammacco. Under the Supreme Court's *Mendenhall* test, a person "has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that she was not free to leave." *California v. Hodari D.*, 499 U.S. 621, 627–28 (1991) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (internal editing and quotation marks omitted). In light of the totality of the circumstances, Plaintiff may not have been free to leave Pizza Plus, because even Defendants concede that they followed Plaintiff down the street, ordering her to stop, until they eventually did stop her. *See, e.g.*, Dammacco Dep. Tr. at 34–36. Because the Court concludes *infra* that Defendants lacked reasonable suspicion sufficient to justify the stop outside of Pizza Plus, the Court notes that reasonable suspicion was also lacking while Plaintiff was still inside.

individual in response to a 911 radio call that relayed "an anonymous tip containing descriptive but no predictive detail").

Not only do each of Officer Dammacco's purported justifications fail to justify stopping Plaintiff, but the justifications taken together, in light of the "totality of the circumstances," also fail. Officer Dammacco testified that he stopped Plaintiff because she was engaged in the offense of "[f]ailure to comply with Officer Johnston's order to stop," but that he had no separate indication "as to what offence [sic] Ms. Jackson may have committed." Dammacco Dep. Tr. at 36:2–14. As discussed *supra*, failure to stop, without reasonable suspicion to justify a stop, does not amount to an offense. *Gilliard*, 2013 WL 521529, at *5.

Even if the Court were to impute Officer Johnston's observations of Plaintiff's prior behavior to Officer Dammacco—which it cannot (*see Colon*, 250 F.3d at 135–36)—and even if the Court were to accept those observations as true, which it may not on a motion for summary judgment, Defendants still have not sufficiently alleged reasonable suspicion. Officer Johnston claims that he was present at Pizza Plus to investigate possible narcotics transactions. Officer Johnston has not alleged Plaintiff was engaged in any suspicious behavior, related to narcotics transactions or otherwise, while she was inside Pizza Plus.[5] Mere presence in an area known for regular crime is insufficient to support reasonable suspicion. *See Petway v. City of New York*, No. 10-TV-01048, 2012 WL 2254246, at *5 (E.D.N.Y. June 14, 2012) (Ross, J.) ("While presence in a 'high-crime area' is a relevant factor in determining whether police have reasonable suspicion, that fact alone is insufficient to support a 'reasonable particularized

---

[5] To the extent Defendants argue they were justified in stopping Plaintiff because she called Officer Johnston a "fucking pig," the Court notes that this would not amount to criminality sufficient to justify detention because "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).

suspicion.'"). Even accepting Defendants' version of the facts as true, Officer Johnston was never justified in ordering Plaintiff to stop in the first place. [6]

Plaintiff's claim that Defendants violated her Fourth Amendment right to be free from unlawful seizure may proceed because the Court concludes Defendants lacked reasonable suspicion to detain her. Therefore, the Court denies Defendants' motion for summary judgment on Plaintiff's unlawful seizure claim against the officers who participated in the detention: Officers Johnston, Campo, and Dammacco. Because Plaintiff has not alleged whether or how any unnamed officers participated in the initial detention, her claims are dismissed against Defendant Officers John Doe and Richard Roe.

### C. Accepting Plaintiff's Version of the Facts as True, Defendants Lacked Probable Cause to Arrest Plaintiff

Defendants also move for summary judgment on Plaintiff's allegation that she was falsely imprisoned and falsely arrested in violation of both federal and state law. A § 1983 claim for false arrest sounding in the Fourth Amendment is "substantially the same" as a claim for false arrest under New York law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Under New York law, the torts of false arrest and false imprisonment are "synonymous." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991). "To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Carson v. Lewis*, 35 F. Supp. 2d 250, 257 (E.D.N.Y. 1999) (Seybert, J.) (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)). The existence of probable cause

---

[6] The Court also notes that the CCRB substantiated Plaintiff's claim that Police Officer Johnston abused his authority when he initially stopped Plaintiff and demanded to see her ID. *See* Ex. 9 to Pl.s' 56.1 St., at 11.

is a complete defense to a § 1983 claim for false arrest. *Weyant*, 101 F.3d at 852; *Singer*, 63 F.3d at 118.

A police officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3 at 852. The validity of an arrest does not depend upon a finding that the arrested person is guilty. *Pierson v. Ray*, 386 U.S. 547, 555 (1967). Rather, a determination of the existence of probable cause "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." *Maryland v. Macon*, 472 U.S. 463, 470 (1985) (internal citation omitted). The existence of probable cause may be determined as a matter of law provided there is no factual dispute regarding the pertinent events and the knowledge of the officers. *See, e.g.*, *Singer*, 63 F.3d at 118–19 (affirming dismissal of false arrest claim on the ground that the facts supporting store owner's complaint of theft established probable cause). Here, the Court must determine whether a reasonable jury could believe that Defendants lacked probable cause to arrest Plaintiff for disorderly conduct pursuant to N.Y. Penal Law § 240.20.[7]

"The issue of precisely when an arrest takes place is a question of fact." *Posr*, 944 F.2d at 99 (citation omitted). In this case, the sequence of events is hazy under either party's recitation of the facts. Under Plaintiff's recitation of the facts, the intrusiveness of her initial detention by Johnston, Campo, and Dammacco probably rose to the level of arrest. *See id.* at 98 (detention rises to level of arrest when subject is restrained and his freedom of movement is restricted) (citing *United States v. Moreno*, 897 F.2d 26, 31 (2d Cir. 1990) and *United States v.*

---

[7] Of the charges filed against Plaintiff, disorderly conduct is the only charge which could arguably have occurred *before*, and thereby justified, Plaintiff's arrest.

*Levy*, 731 F.2d 997, 1001 (2d Cir. 1984)). But, even assuming Plaintiff's initial detention did not

constitute an arrest, it is undisputed that Plaintiff was handcuffed, confined in a police car, and

brought to the precinct pending arraignment—that is to say, formally arrested—shortly after her

initial detention. Just as Plaintiff's initial detention was not justified by reasonable suspicion,

probable cause did not arise in the moments between Plaintiff's initial detention and eventual

arrest. Accepting Plaintiff's version of events as true, Defendants had no legal justification to

stop her, and did not acquire any justification after stopping her that would justify her arrest.

Rather, Plaintiff asserts she was lawfully refusing to stop and only resisted Officer Dammacco's

detention out of self-defense and due to surprise. *See* Pl.'s Dep. Tr. at 105:6–106:13. At the

very least, there exists a genuine dispute as to when and whether Plaintiff's behavior created

probable cause to justify her arrest. In addition, there exists a genuine dispute as to which

Defendants played which roles in Plaintiff's arrest. *See, e.g.*, Dammacco Dep. Tr. at 45:5–10

("[Plaintiff and I] were—I guess you could say on the bottom of the pile [of officers]. I don't

know where anybody was at this point."). Therefore, the Court denies Defendants' motion for

summary judgment on Plaintiff's state and federal claims for false arrest against Officers

Johnston, Campo, Dammacco, John Doe, and Richard Roe.

### D. Defendants' Motion for Summary Judgment on Plaintiff's Claim for Malicious Prosecution is Granted in Part and Denied in Part

Like unlawful seizure and false arrest, a malicious prosecution action implicates the

constitutional right "to be free of unreasonable seizure of the person." *Singer*, 63 F.3d at 116.

Therefore, to succeed on a § 1983 claim of malicious prosecution, the plaintiff "must show some

post-arraignment deprivation of liberty that rises to the level of a constitutional violation." *Id.* at

117. The elements of a malicious prosecution claim brought under § 1983 are substantially the

same as in malicious prosecution claims brought under New York law. *Conway v. Vill. of Mount*

*Kisco*, 750 F.2d 205, 214 (2d Cir. 1984). Under New York law, "[t]o prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

The first and fourth factors are not in dispute as to Defendant Officers Johnston, John Doe, Richard Roe, and Sergeant Montesquieu.[8] These Defendants initiated prosecution against Plaintiff for the following charges, and their prosecution terminated in Plaintiff's favor: assault on a police officer, criminal mischief in the fourth degree, resisting arrest, disorderly conduct, and harassment in the second degree. *See* Ex. 11 to Pl.'s 56.1 St. Therefore, this Court must determine whether a genuine dispute of facts precludes the Court from finding, as matter of law, that Defendants had probable cause to believe prosecutions of these charges could succeed. If the Court cannot conclude Defendants acted with probable cause, then the Court must consider whether Defendants prosecuted Plaintiff with malice. In conducting this analysis, the Court notes the "wide gulf between the facts necessary to establish probable cause and those necessary to establish guilt beyond a reasonable doubt." *Estrada v. Torres*, 646 F. Supp. 2d 253, 260 (D. Conn. 2009) (Arterton, J.) (citing *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989)). In other words, "[o]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt." *Krause*, 887 F.2d at 372.

---

[8] Defendants argue Plaintiff has failed to show that Officers Campo and Dammacco played any role in the initiation of criminal charges against Plaintiff, *see* Defs.' Br. at 12, and Plaintiff does not attempt to contest this fact. A plaintiff alleging malicious prosecution must "show[] that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000). Because Plaintiff has failed to make that showing here, the Court dismisses Plaintiff's claims for malicious prosecution against Officers Campo and Dammacco.

14

"[T]he existence of probable cause to prosecute entitles the defendant to summary judgment in his favor." *Genia v. New York State Troopers*, No. 03–CV–0870, 2007 WL 869594, at *12 (E.D.N.Y. Mar. 20, 2007) (Bianco, J.) (citation omitted). In the context of malicious prosecution, "probable cause is 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Id.*, at *12 (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629–30 (2d Cir. 1994)). The Second Circuit has "clearly distinguished the probable cause necessary to defeat a false arrest claim from that required to defeat a malicious prosecution claim." *Gannon v. City of New York*, No. 12 CV 3893, 2013 WL 76198, at *3 (S.D.N.Y. Jan. 8, 2013) (Baer, J.) (citing *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)). "[T]he existence, or lack, of probable cause is measured at a different point in time in a malicious prosecution action than a false arrest action, where the prosecution follows a warrantless arrest." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000) (Trager, J.). "Thus, information discovered by a malicious prosecution defendant after the arrest, but before the commencement of proceedings, is relevant to the determination of probable cause in cases where the prosecution follows a warrantless arrest." *Id.*

To determine whether Defendants had probable cause to believe prosecutions could succeed, the Court must consider the elements of each of the relevant charges:

A person is guilty of criminal mischief in the fourth degree when, "having no right to do so nor any reasonable ground to believe that he or she has such a right, he or she: (1) [i]ntentionally damages property of another person; or . . . (3) [r]ecklessly damages property of another person in an amount exceeding two hundred fifty dollars." N.Y. Pen. L. § 145.00. Plaintiff has not disputed that she kicked out the rear window of the police vehicle while under

15

arrest. Although Plaintiff disputes the value of this damage, *see* Pl.'s 56.1 St., at ¶ 15, she does not dispute that the value exceeded $250. Plaintiff maintains she had reasonable grounds to believe she had a right to turn herself over and loosen her handcuffs. Nonetheless, under the circumstances where Plaintiff violently resisted arrest, refused to enter one vehicle, and continued to kick and struggle once inside the second vehicle, it was reasonable for the Defendants to believe Plaintiff did not have such a right. Therefore, on these undisputed facts, no reasonable jury could conclude Defendants lacked probable cause to prosecute Plaintiff for criminal mischief. Accordingly, Defendants' motion for summary judgment on Plaintiff's claim for malicious prosecution of criminal mischief is granted.

"A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [she] engages in fighting or in violent, tumultuous or threatening behavior." N.Y. Pen. L. § 240.20. Defendants allege Plaintiff made "threatening gestures" inside Pizza Plus. Defs.' 56.1 St., at ¶ 4. If undisputed, this "threatening behavior" may have created probable cause to justify the prosecution. However, this allegation is contradicted by not only Plaintiff's, but also Defendants' testimony.[9] Plaintiff denies using obscene language in public and alleges that her ensuing physical struggle with Defendants was motivated entirely by self-defense. Because Plaintiff's intention is a material element of the charge, and because obscene language does not amount to "violent, tumultuous or threatening behavior," a genuine dispute precludes this Court from concluding, as a matter of law, that Defendants had probable cause to believe they could prosecute Plaintiff for disorderly conduct. Accordingly, Defendants' motion for summary judgment on Plaintiff's claim for malicious prosecution of disorderly conduct is denied.

---

[9] Sergeant Montesquieu testified that when he questioned Johnston about his justification for arresting Plaintiff, Officer Johnston reported "it was . . . specifically for obscene language in public." Monstesquieu Dep. Tr. at 28:8–9.

"A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: (1) . . . she strikes, shoves, kicks or otherwise subjects such another person to physical contact, or attempts or threatens to do the same . . . ." N.Y. Pen. L. § 240.26. As discussed *supra*, Plaintiff successfully removed a male police officer from her back by means of physical force. *See* Pl.'s Dep. Tr. at 106:7–13. However, Plaintiff alleges her physical struggle was in self-defense and was therefore justified. *See Jocks v. Tavernier*, 316 F.3d 128, 136–37 (2d Cir. 2003) (holding, on plaintiff's version of the facts, that plaintiff was acting in self-defense such that his actions were not criminal and could not create probable cause to justify his malicious prosecution); *see also People v. Carneglia*, 63 A.D.2d 734, 735, 405 N.Y.S.2d 298, 299 (N.Y. App. Div. 2d Dep't 1978) (holding that "reasonable acts of self-defense" are justifiable in response to "an unprovoked police assault"). Thus, a reasonable jury could conclude Defendants lacked probable cause to believe they could successfully prosecute Plaintiff for harassment. Accordingly, Defendants' motion for summary judgment on Plaintiff's claim for malicious prosecution of harassment is denied.

A person is guilty of resisting arrest "when [s]he intentionally prevents or attempts to prevent a police officer . . . from effecting an *authorized* arrest of h[er]self." N.Y. Pen. L. § 205.30 (emphasis added). Plaintiff admits she intentionally attempted to prevent the officers from arresting her. However, as discussed *supra*, a genuine dispute exists as to whether the arrest was authorized at its initiation. Therefore, genuine issues of material fact preclude this Court from concluding, as a matter of law, that Plaintiff's arrest was authorized at the time she resisted it. Accordingly, Defendants' motion for summary judgment on Plaintiff's claim for malicious prosecution of resisting arrest is denied.

Under New York Penal Law, a person is guilty of assault on a police officer "when, with intent to prevent [him] . . . from performing a lawful duty, he causes serious physical injury to such . . . police officer." N.Y. Pen. L. § 120.08. There are genuine disputes as to both elements of this offense: (i) whether Plaintiff intended to prevent Defendants from performing their lawful duty (as discussed *supra*, there is a question of fact as to whether Defendants were engaged in a lawful duty in the first place), and (ii) whether Plaintiff's actions caused serious injury to Officers Dammacco and Campo (*see* Pl.'s 56.1 St., at ¶ 10). *See* N.Y. Pen. L. § 120.08. Defendants have not shown probable cause existed, as a matter of law, to justify Plaintiff's prosecution for assault on a police officer. Therefore, the Court concludes that issues of fact preclude summary judgment on Plaintiff's claim for malicious prosecution of two counts of assault on a police officer.

The Court grants summary judgment in Defendants' favor on Plaintiff's claim for malicious prosecution of criminal mischief in the fourth degree. However, the parties dispute facts material to determining whether Defendants had probable cause to prosecute the remaining charges. Moreover "a jury could infer malice from a lack of probable cause, which is sufficiently in dispute to survive summary judgment." *Ostrowski v. Town of Southold*, 443 F.Supp.2d 325, 340 (E.D.N.Y. 2006) (Bianco, J.). Therefore, the Court denies Defendants' motion for summary judgment on Plaintiff's claims against Officers Johnston, John Doe, Richard Roe, and Sergeant Montesquieu for malicious prosecution of two counts of assault on a police officer, resisting arrest, disorderly conduct, and harassment in the second degree.

### E. Excessive Force and Unreasonable Handcuffing

The Supreme Court has held that in the context of arrests, "claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment and its

18

'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). In this case, the Court must first determine whether the facts, read in light most favorable to Plaintiff, demonstrate the use of force was not objectively reasonable in light of the circumstances confronting the officers at the time of Plaintiff's arrest. *Washpon v. Parr*, 561 F. Supp. 2d 394, 406 (S.D.N.Y. 2008) (Buchwald, J.) (citing *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003)).

In deciding whether the amount of force used was reasonable, a reviewing court must consider the "totality of the circumstances faced by the officer[s] on the scene," *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995), and assess whether the officers' actions were "objectively reasonable" in light of the facts and circumstances facing them, regardless of their underlying intent or motivation. *Graham*, 490 U.S. at 397. This inquiry is fact specific and requires "balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). "In conducting that balancing, we are guided by consideration of at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396 and *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)). In evaluating the reasonableness of handcuffing, specifically, the Court must consider the following evidence: (1) whether the handcuffs were unreasonably tight; (2) whether the Defendants ignored the Plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists. *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (Sifton, J.).

19

To succeed on a claim for excessive force or unreasonable handcuffing, a plaintiff must also present sufficient evidence to establish that "the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable." *Cunningham v. Rodriguez*, No. 01 Civ. 1123, 2002 WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002) (Chin, J). "[T]he Second Circuit and district courts in the Circuit recognize the concept of '*de minimis*' injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed." *Lemmo v. McKoy*, No. 08-CV4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) (Dearie, J.). "Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches from a cut inside the mouth." *Id.* (citations omitted).

Nonetheless, courts in the Second Circuit have allowed plaintiffs to pursue excessive force and unreasonable handcuffing claims even where the injury was not permanent or severe, where the force used was excessive and gratuitous. *See, e.g., id.* (denying motion for summary judgment where plaintiff alleged defendants twisted his thumbs while plaintiff was already handcuffed and secured inside a jail cell); *Davenport v. County of Suffolk*, 99-CV-3088, 2007 WL 608125 (E.D.N.Y. Feb. 23, 2007) (Bianco, J.) (denying motion for summary judgment where plaintiff alleged that defendant intentionally and unnecessarily hit plaintiff's head against police car during arrest). It is inappropriate for this Court to rule as a matter of law that prosecution of claims to recover for such minor injuries would necessarily be futile because a jury "may consider the lack of serious injury as evidence that the implemented force was not excessive, and weigh it against [a plaintiff's] testimony, but that does not mean that there are no circumstances under which [a plaintiff] can prevail." *Davenport*, 2007 WL 608125, at *11.

In this case, the parties do not dispute Plaintiff was treated for injuries following her arrest. The emergency physician record reports contusions to Plaintiff's back, tenderness on Plaintiffs' abdomen, and swelling around Plaintiff's wrists, which required Plaintiff to keep her arm in a splint and return for follow-up. Ex. 10 to Pl.'s 56.1 St. She was directed to take Motrin and Tylenol to treat the pain resulting from these injuries. *Id.* Although not permanent or severe, these injuries are sufficiently harmful to be actionable. *See, e.g., Hodge v. Village of Southampton*, 838 F. Supp. 2d 67, 77–78 (E.D.N.Y. 2012) (denying summary judgment where plaintiff was treated for bruising at a hospital and discharged with Motrin).

The Court has already concluded that Plaintiff had not committed and did not appear to be committing any crime at the time of her initial detention. Therefore, at a minimum, there exists a question of fact with respect to the reasonableness of the force used by arresting officers Johnston, Campo, and Dammacco during Plaintiff's initial seizure. However, although Defendants had no reasonable basis to use force at the beginning of the parties' interaction, use of force may have become reasonable over the course of the rapid sequence of events. After all, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

The remaining Defendants argue they are entitled to summary judgment because Plaintiff has not proven which individual Defendants committed which unreasonably forceful actions. The Court disagrees. All parties agree Defendant Officers Dammacco, Campo and Johnston were involved in Plaintiff's arrest, which all also agree involved considerable physical struggle. *See* Dammacco Dep. Tr. at 45:5–10 ("[Plaintiff and I] were—I guess you could say on the

21

bottom of the pile [of officers]. I don't know where anybody was at this point."). Defendants separately argue they are entitled to summary judgment because they used force solely in response to Plaintiff's efforts to resist arrest. However, while both parties agree Plaintiff was actively resisting arrest, the character of that resistance is sharply disputed: Defendants claim that Plaintiff violently and offensively resisted arrest, endangering the officers' safety (although not the safety of bystanders), and requiring Officers Dammacco and Campo to seek medical treatment. By contrast, Plaintiff maintains that her struggle to escape arrest was entirely defensive because the arrest itself was unauthorized. The parties furthermore dispute whether Plaintiff informed Defendants that her handcuffs were too tight, and therefore whether Defendants' knowingly ignored Plaintiff's pleas. These disputes preclude summary judgment on Plaintiff's excessive force and unreasonable handcuffing claims. Accepting Plaintiff's version of events as true, a reasonable jury could conclude that Defendants used excessive force and unreasonably handcuffed Plaintiff.

## F. Defendants Are Not Entitled to Qualified Immunity

"The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317–18 (2d Cir. 1994) (internal quotation marks and citations omitted). "[A]n arresting officer is entitled to qualified immunity on claims of false arrest and malicious prosecution if either: (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Carthew v. County of Suffolk*, 709 F. Supp.

22

2d 188, 203 (E.D.N.Y. 2010) (Bianco, J.) (citing *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007);

*Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999)).

The Second Circuit has defined the latter standard, commonly referred to as "arguable

probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same
> circumstances and possessing the same knowledge as the officer in question
> *could* have reasonably believed that probable cause existed in the light of well
> established law. It is inevitable that law enforcement officials will in some
> cases reasonably but mistakenly conclude that probable cause is present, and
> we have indicated that in such cases those officials—like other officials who
> act in ways they reasonably believe to be lawful—should not be held
> personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (quotation marks and internal citations

omitted) (emphasis in original). Moreover, under this standard, "an 'arresting officer is entitled to

qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable

to the plaintiff show that officers of reasonable competence could disagree on whether the probable

cause test was met.'" *McClellan v. Smith*, 439 F.3d 137, 147–48 (2d Cir. 2006) (quoting *Robison v.

Via*, 821 F.2d 913, 921 (2d Cir. 1987)) (internal editing omitted) (emphasis in the original).

In establishing whether arguable probable cause existed, officers are "entitled to draw

reasonable inferences from the facts they possess at the time of a seizure based upon their own

experiences." *Cerrone*, 246 F.3d at 203 (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

"This forgiving standard protects 'all but the plainly incompetent or those who knowingly violate the

law.'" *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (quoting *Malley v. Briggs*,

475 U.S. 335, 341 (1986)). Only where an officer's judgment was "so flawed that no reasonable

officer would have made a similar choice," is the denial of qualified immunity appropriate. *Id.* In

the end, qualified immunity "protects government officials when they make 'reasonable mistakes'

about the legality of their actions." *Doninger v. Niehoff*, 642 F.3d 334, 353 (2d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

The Second Circuit has established a separate, two-step analysis for determining whether police officers are entitled to assert qualified immunity against claims of excessive force, which the Court will also apply to Plaintiff's claims for unreasonable handcuffing. *See Cowan*, 352 F.3d at 761. Under this analysis, the Court first determines "whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation." *Id.* (internal citation omitted). The Court resolved this threshold question in Plaintiff's favor, *supra*. Therefore, the Court must next determine "whether the constitutional right was clearly established at the time of the constitutional violation [and] whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (internal citation and quotation marks omitted).

### 1. Qualified Immunity Against Plaintiff's Claims for Unlawful Seizure and False Arrest

Defendant Officers Johnston and Campo are not entitled to qualified immunity with respect to Plaintiff's claims for unlawful seizure and false arrest. The parties do not dispute Plaintiff had not committed and did not appear to be committing any crimes at the time Officers Johnston and Campo initially ordered her to stop. Both officers ordered Plaintiff to stop and attempted to stop her without justification. In addition, Officer Johnston actively requested backup, which escalated the parties' interaction and caused Plaintiff's arrest. To the extent Defendants attempt to argue Officer Campo did not participate in Plaintiff's arrest, *see* Defs.' Br. at 8, they are in error. *See Mack*, 253 F. Supp. 2d at 558–59 (active assistance, such as ordering Plaintiff to stop and standing by during arrest, constitutes participation in arrest) (internal citations omitted). Therefore, because it was not objectively reasonable for Officers Johnston

24

and Campo to initiate and conduct Plaintiff's unlawful seizure and false arrest, neither is entitled to qualified immunity against those claims.

The Court has already concluded that Officers Dammacco, John Doe, and Richard Roe, responding to a request for backup, lacked probable cause sufficient to lawfully detain and arrest Plaintiff. However, to determine whether these Defendants are entitled to qualified immunity against Plaintiff's unlawful seizure and false arrest claims, the Court must determine whether their mistakes were reasonable under the circumstances confronting them. The Court concludes, resolving all factual disputes in Plaintiff's favor, that officers of reasonable competence could not disagree that probable cause did not exist to justify the Defendants' seizure and arrest of Plaintiff.

Although "[a] police officer is entitled to rely on the contents of a fellow officer's radio report and to presume that a statement alleging criminality is justified by probable cause," *Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 577 (S.D.N.Y. 2002) (McMahon, J.), this reliance, commonly referred to as the "fellow officer" rule, does not apply in this case. The "fellow officer" rule is typically invoked in cases where the record is clear as to what the officer seeking backup reported. *See, e.g.*, *Martinez v. Simonetti*, 202 F.3d 625, 635 (2d Cir. 2000) (concluding that officers were entitled to rely on accounts narrated by other officers at the scene). Moreover, the New York Court of Appeals has held that an officer is entitled to rely on a fellow officer's report only when the reporting officer "has the requisite probable cause." *People v. Rosario*, 78 N.Y.2d 583, 588, 578 N.Y.S.2d 454, 457 (N.Y. 1991). If the arrest is challenged for lack of probable cause, the police bear the burden of establishing that the reporting officer had probable cause prior to issuing the relied-upon radio report. *Id.* This analysis has been adopted by the

Second Circuit in holding that reliance on information from a 911 dispatcher did not create probable cause to justify the arresting officer's actions. *Colon*, 250 F.3d at 137.

In this case, Officer Johnston's memo book indicates that he requested "non-emergency" backup, Ex. 6 to Pl.'s 56.1 St., at 3, and no evidence has clarified what, if anything, Johnston reported when issuing that request. Moreover, Sergeant Montesquieu testified that when he questioned Johnston about his justification for arresting Plaintiff, Officer Johnston reported "it was . . . specifically for obscene language in public." Monstesquieu Dep. Tr. at 28:8–9. Because Officers Johnston and Campo may have lacked probable cause to initiate the arrest and radio report, Officers Dammacco, John Doe, and Richard Roe cannot show what, if any, probable cause existed to be relied upon. The Court concludes that these officers are not immune from liability for unreasonable seizure and false arrest. Officers Dammacco, John Doe, and Richard Roe did not observe Plaintiff engaged in any criminal activity and were not advised of what criminal activity warranted the backup request.

### 2. Qualified Immunity Against Plaintiff's Claims for Malicious Prosecution

The Court similarly concludes that Defendant Officers Johnston, John Doe, Richard Roe and Sergeant Montesquieu are not entitled to qualified immunity with respect to Plaintiff's surviving claims for malicious prosecution. As discussed *supra*, the parties genuinely dispute numerous material elements of Plaintiff's criminal charges. For example, serious injury to a police officer is a material element of the crime of assault on a police officer, but Plaintiff denies Officers Dammacco and Campo were injured, much less seriously injured, and Defendants have introduced no evidence tending to support the existence of these injuries. As a further example, an individual cannot be successfully prosecuted for resisting arrest where the underlying arrest is not authorized, but the parties strongly contest whether Plaintiff's arrest was justified by

26

probable cause. Finally, Plaintiff asserts she was motivated solely by self-defense during her physical struggle with Defendants and did not intend to harass or cause public inconvenience, material elements to the harassment and disorderly conduct charges, respectively. Therefore, construing the facts in the light most favorable to Plaintiff, officers of reasonable competence could not disagree that Defendants lacked probable cause to prosecute Plaintiff for assault on a police officer, resisting arrest, disorderly conduct, and harassment in the second degree. Accordingly, Officers Johnston, John Doe, Richard Roe, and Sergeant Montesquieu are not entitled to qualified immunity against Plaintiff's malicious prosecution claims.

### 3. Qualified Immunity Against Plaintiff's Claims for Excessive Force and Unreasonable Handcuffing

With respect to Plaintiff's claims for excessive force and unreasonable handcuffing, the Court concludes that none of the Defendants are entitled to qualified immunity. The parties do not dispute that Plaintiff was walking away from Johnston and from Pizza Plus at the time Officer Dammacco arrived at the scene. Plaintiff did not appear to be engaged in any criminal activity and did not appear to be a physical threat to any police officers or bystanders. Moreover, it is undisputed that Johnston did not radio report any details about Plaintiff's behavior, which might have justified a mistaken belief in the need to use force against her. Although an officer relying on a fellow officer's report would have been reasonable in mistakenly believing he had probable cause to initiate an arrest for reported—not observed—criminality, *see Rosario*, 78 N.Y.2d at 588, 578 N.Y.S.2d at 457, no reasonable officer could have believed that using any force whatsoever against Plaintiff was lawful under the circumstances where Officer Johnston did not describe any need for force and where Officer Dammacco did not observe any criminal activity by Plaintiff. Nonetheless, Officer Dammacco testified that he grabbed Plaintiff around her torso, holding her arms behind her back. *See* Dammacco Dep. Tr. at 40:23–25, 43:3–17.

Therefore, Officer Dammacco is not entitled to qualified immunity against Plaintiff's claim of excessive force.

Although there is no dispute that Plaintiff engaged in a physical struggle with the arresting officers after Officer Dammacco initiated the arrest, *see* Pl.'s 56.1 St., at ¶¶ 9–11, a reasonable jury could find that Plaintiff's actions were justified by self-defense and, therefore, that Defendants' actions were objectively unreasonable under the circumstances. It should have been clear to all Defendants that their use of force against and tight handcuffing of Plaintiff were unlawful under the circumstances of her justified resistance to false arrest and excessive physical force. Therefore, the remaining Defendants are also not entitled to qualified immunity against Plaintiff's claims of unreasonable handcuffing and excessive force.

The Court concludes Officers Dammacco, Campo, Johnston, John Doe, Richard Roe, and Sergeant Montesquieu are not entitled to qualified immunity against Plaintiff's claims for unreasonable seizure, false arrest, unreasonable handcuffing, and excessive force. Officers Johnston, John Doe, and Richard Roe are also not entitled to qualified immunity against Plaintiff's claims for malicious prosecution.

### G. Failure to Intervene in Officer Dammacco's Use of Excessive Force and Plaintiff's False Arrest

"A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). An officer may be held liable for preventable harm caused by the actions of other officers, if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable

steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (Marrero, J.).

As discussed *supra*, Officers Johnston and Campo were on the scene since the beginning of this series of events. Therefore, they must have had a realistic opportunity to intervene to prevent the excessive force used by Officer Dammacco to initiate Plaintiff's arrest. *See, e.g.*, *Sims v. Griener*, No. 00 CIV. 2524, 2001 WL 1142189, at *5 (S.D.N.Y. Sept. 27, 2001) (Preska, J.) (concluding that officers had a reasonable opportunity to intervene during a two-minute assault by fellow police officers). Indeed, Officers Johnston and Campo had the opportunity to prevent the excessive force even before it had begun. Moreover, having concluded *supra* that Officers Johnston and Campo should have known they lacked probable cause to initiate Plaintiff's arrest, they should have also known Officer Dammacco lacked probable cause to use force against Plaintiff. Having failed to intervene to prevent this initial excessive force, Officers Johnston and Campo are subject to liability—and are not entitled to qualified immunity—for their failure to intervene to prevent Officer Dammacco's use of excessive force against Plaintiff. Defendants' motion for summary judgment on Plaintiff's claim for failure to intervene to prevent excessive force by Officer Dammacco is accordingly denied as to Officers Johnston and Campo.

For similar reasons, Sergeant Montesquieu is not entitled to summary judgment on Plaintiff's claim for failure to intervene to prevent Plaintiff's false arrest. Although Plaintiff was already under arrest at the time of his arrival, *see* Montesquieu Dep. Tr. at 27:5–8, Sergeant Montesquieu was the highest ranking officer on the scene and therefore had a realistic opportunity to intervene and end Plaintiff's arrest. *See id.* at 25:9–21; *see also Kelly v. Burns*, No. 5:02 CV 0641, 2005 WL 2387831 (N.D.N.Y. Sept. 27, 2005) (Mordue, J.) (upholding claim for failure to intervene on grounds that officer was present during constitutional violation and

was supervising officer during the incident in question). Along with Officers Dammacco, John Doe, and Richard Roe, Sergeant Montesquieu arrived on scene in response to Officer Johnston's vague and possibly unfounded request for backup. Absent any report or observation of criminality, Sergeant Montesquieu should have known that the victim's constitutional rights were being violated. Indeed, Sergeant Montesquieu understood that Plaintiff was stopped and arrested "specifically for obscene language in public," which is not a criminal act. Monstesquieu Dep. Tr. at 28:8–9. Defendants' motion for summary judgment on Plaintiff's claim for failure to intervene to prevent Plaintiff's unlawful seizure and false arrest is accordingly denied as to Sergeant Montesquieu. Furthermore, it was not objectively reasonable for Sergeant Montesquieu to fail to intervene under these circumstances. Therefore, Sergeant Montesquieu is not entitled to qualified immunity against Plaintiff's claim for failure to intervene to prevent her false arrest.

However, Sergeant Montesquieu is not liable for failure to intervene to prevent Officer Dammacco's initial use of force against Plaintiff, because the record is undisputed that Sergeant Montesquieu had no opportunity to intervene to prevent Officer Dammacco's initial use of force. *See, e.g.*, Montesquieu Dep. Tr. at 25:3–8, 27:5–8 (testifying that Officers Campo and Dammacco were already present, and Plaintiff was already under arrest, when he arrived at the location); *see also* Pl.'s 56.1 St. at ¶ 7–10 (failing to allege whether any officers besides Officers Dammacco, Johnston, and Campo were on scene at the time the initial force was used).

## H. Plaintiff's Pendent State Law Claims Are Dismissed

Defendants argue Plaintiff's state law claims must fail because Plaintiff failed to name any individual defendants in her notice of claim, as required by New York, General Municipal Law Section 50-e ("Section 50-e"). *See* Ex. J to Defs.' 56.1 St. As Plaintiff concedes, a notice of claim is required prior to initiating any action in tort against the City of New York. *See* Pl.'s

30

Br. at 25; *Brown v. Metro Transp. Auth.*, 717 F. Supp. 257, 259 (S.D.N.Y. 1989) ("[A] notice of claim . . . is a mandatory condition precedent to the bringing of a tort claim against a public corporation, or any of its officers, appointees, or employees.").

Plaintiff argues that her failure to name individual Defendants was excusable because "knowledge as to all of the officers who were involved in this matter did not come to be known until January 31, 2011." *Id.* at 26. Plaintiff argues further that her omission should be excused because her notice of claim provides sufficient information to "enable authorities to investigate, collect evidence, and evaluate the merit of the claim." *Id.* (internal citations omitted). The Court recognizes Plaintiff's unequal access to information, and acknowledges that some legal support for her argument exists. *See Verponi v. City of New York*, No. 16258/2004, 31 Misc.3d 1230(A), at *5 (N.Y. Sup. Ct. Kings Cty. 2011) (holding notice of claim sufficient despite failure to name individual officers where the notice "gave a sufficiently detailed description on the incident and the nature of Plaintiff's claims to enable the City to identify the officers involved and investigate her claims"). Nonetheless, the Court concludes that Plaintiff's pendent state law claims fail.

First, *Verponi* is distinguishable because there the Court's holding was based on the level of detail contained in the notice, which enabled the city to identify the officers involved. *See id.* In this case, by contrast, Plaintiff's notice of claim merely describes "[t]wo New York City Police Officers," "[a]nother officer, who had evidently been on foot patrol," "two other officers who had arrived," and, eventually, "a total of eight officers," involved in the alleged violations. *See* Ex J to Defs.' 56.1 St at 1–2. Later in her notice, Plaintiff describes "a male Hispanic," "a female African-American police officer," and "[a] black male police officer," but does not allege that any of these officers committed any unlawful acts. Indeed, after months of discovery, both parties remain unable to identify the names and number of certain officers mentioned in

31

Plaintiff's notice. Although Plaintiff's federal claims may proceed against these unnamed officers, the parties' combined failure to identify additional officers is strong evidence that the notice of claim was insufficient to enable the City of New York to identify the officers involved.

Second, courts in the Second Circuit, relying on New York law, strictly construe Section 50-e to forbid a Plaintiff from "fil[ing] a notice of claim naming a municipal entity and then commenc[ing] an action against a roster of individual municipal employees." *Schafer v. Hicksville Union Free Sch. Dist.*, 06-CV-2531, 2011 WL 1322903, at *11 (E.D.N.Y. Mar. 31, 2011) (Seybert, J.) (citing *White v. Averill Park Cent. Sch. Dist.*, 759 N.Y.S.2d 641, 643 (N.Y. Sup. Ct. Rensselaer Cty. 2003)); *Holloman v. City of New York*, 11-cv-01624 (S.D.N.Y. June 7, 2012) (Hellerstein, J.) (dismissing state law claims against individual defendants where those defendants were not properly named as respondents).

Therefore, this Court will not permit Plaintiff's state law claims to proceed in light of her failure to comply with Section 50-e. Accordingly, Plaintiff's state law claims for assault, battery, negligent hiring and supervision, intentional infliction of emotional distress, and negligent infliction of emotional distress are dismissed with prejudice.

### I. Plaintiff's Claim for Deliberate Indifference to Medical Needs is Dismissed with Prejudice

To prevail on a constitutional claim of deliberate indifference to medical needs, a plaintiff must prove that she suffered from an objectively serious medical condition, which the defendants knew of and deliberately disregarded. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Plaintiff admits an ambulance transported her from the precinct to the hospital, where she was treated for injuries sustained during her arrest. Pl's 56.1 St., at ¶ 24; Pl.'s Br. at 9. As such,

there is no genuine issue of fact tending to support Plaintiff's claim of deliberate indifference to her medical needs and Defendants are entitled to summary judgment with respect to this claim.

### III.    Conclusion

A reasonable jury may conclude Defendants lacked reasonable suspicion to stop Plaintiff and probable cause to arrest Plaintiff. Following these initial infirmities, Defendants lacked probable cause to prosecute Plaintiff for many of the charges brought against her and are not entitled to qualified immunity against Plaintiff's causes of action. Accordingly, Defendants' motion for summary judgment is denied in substantial part.

Defendants' motion is granted with respect to Plaintiff's claims of malicious prosecution for criminal mischief in the fourth degree and deliberate indifference to medical needs. Plaintiff's pendent state law claims are also dismissed with prejudice.

Plaintiff's claims for unlawful seizure, false arrest, excessive force, and unreasonable handcuffing will proceed against Officers Johnston, Campo, Dammacco, John Doe, and Richard Roe. Plaintiff's claim for failure to intervene to prevent unlawful seizure and false arrest will proceed against Sergeant Montesquieu. Plaintiff's claim for failure to intervene to prevent Officer Dammacco's use of excessive force against Plaintiff will also proceed against Officers Johnston and Campo. Finally, Plaintiff's claims for malicious prosecution of two counts of assault on a police officer, resisting arrest, harassment, and disorderly conduct will proceed against Defendant Officers Johnston, John Doe, Richard Roe, and Sergeant Montesquieu.

**SO ORDERED**

s/WFK

Dated:   Brooklyn, New York
        April 16, 2013

HON. WILLIAM F. KUNTZ, II
United States District Judge

33